No. ——

First Circuit

WATSON v. HOLMES AND BARNES, LTD.

(December 6, 1927. Opinion and Decree)

(*Syllabus by the Editor*)

1. Louisiana Digest—Master and Servant —Par. 158.

The widow cannot recover under the Workmen's Compensation Act No. 20 of 1914 and amendments where employee was killed three hundred and seventy-three feet from the premises of his employer while he was on a personal errand and not in the course of his employment, and in disobedience to instructions given to him by his master.

Appeal from the Parish of East Baton Rouge. Hon. Wm. Carruth Jones, Judge.

Action by Mrs. Martha Pipes Watson against Holmes and Barnes, Ltd.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

J. F. Odom and C. C. Bird, of Baton Rouge, for plaintiff, appellant.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellee.

MOUTON, J. Defendant company, Holmes and Barnes, has a wholesale grocery store and warehouse on a block of ground in the City of Baton Rouge, bounded north by Government Street, south by France street,

east by St. Philip Street, and west by St. James Street.

Defendant had also a mule corral which was situated just across France Street, and south of defendant's wholesale grocery store.

William W. Watson was employed by defendant to guard or watch over these premises during the night between the hours of six p. m. and six a. m.

Between the hours of 9 and 10 o'clock of the night of March 4, 1925, Watson was run over by a truck and killed at the intersection of St. Philip and Europe Streets at a distance of 373 feet from defendant's grocery store and warehouse.

Plaintiff, as surviving spouse of Watson, sues defendant company in damages under the Employers' Liability Act. Her demand was rejected. She appeals.

The case comes upon an agreed statement of facts.

This statement shows it was a rule of defendant company that its night watchman should not leave the square or block bounded by Government, St. James, St. Philip and France Streets for any purpose whatsoever except to inspect and to punch the station clock in the mule corral immediately across France street which runs south of defendant's store and warehouse; and also that Watson had been apprised of that rule and explicitly instructed by the officers of the company not to leave the square of Holmes and Barnes except to visit the mule corral which was situated across France Street, fifty-three and one-third feet wide.

There was a store at the corner of St. Philip and Europe Streets, which was located about 373 feet from the grocery store and warehouse of defendant company. It is said in the statement of facts that about twice a week Watson would send some one to the store at the corner of St. Philip and Europe Streets to get milk and matches to be used by him on the premises he was employed to watch; that he hardly went to the store himself, although occasionally he did go personally. It is, however, stated, that defendant had no knowledge of Watson having left its premises while on duty as night watchman to go to the store, nor did it know he had left these premises on the night of the accident, or intended to leave.

As a matter of fact it is only supposed that Watson, on the night he was killed, had gone, or was going to that store for the purpose stated, as there is no proof to that effect as appears from the statement of facts.

It is therefore apparent that if Watson was going to the store for the purpose stated or was returning therefrom, he had not left the premises he was employed to watch, for the purpose of discharging any duty devolving upon him as night watchman; that he was, therefore going or coming from the store, on an errand or mission of his own, and as also appears from the statement of facts, in violation of the rule of the company, and the specific instructions he had received from its officers. He was, at the time he was killed, a little over 373 feet from the premises he was employed to watch over and protect. He was there on a personal errand or mission, and as far as the record discloses, for his individual interest or convenience. It is impossible to say under evidence of the character above referred to, that deceased received the injuries from which he died, by "accident arising out of and in the course of his employment". In Piske vs. Brooklyn Cooperage Co., 143 La. 455, 78 South 734, the party killed had temporarily left the building in which he was required to be, and where it was shown his em-

ployment did not justify him in going, to to the place where he was injured. The Court held his widow was not entitled to recover. Here, it does not only appear that he had left the premises where he was required to remain, but had done so in disobedience to the orders he had received from the Company, and in violation of one of its rules of which he had been warned.

Counsel for plaintiff refers us to the case reported in Prevost vs. Gheens Realty Co., 151 La. 508, 92 South. 38. In that case, the employee when injured was going from his work to his lodging house on the employer's premises, where he had the privilege of sleeping as a part of the compensation for his work. In the instant case, the deceased was hurt, not on his employer's premises where it was clearly his duty to remain, and he was certainly not going where he was privileged to go under the terms of his employment, and which was to be considered as a part of the compensation for his work. Nothing of that exists here, which shows the inapplicability of the case cited to the merits of the present contention.

Counsel for plaintiff relies, it seems, confidently on the case of Craft vs. Gulf Lumber Company, 151 La. 281, 91 South. 736. That case was one in damages by the parents for the killing of their minor son, the result of an automobile accident. It was shown there that the driver of the auto had been instructed to remain at his stand at the corner of Melpomene and Dryades Streets. He picked up a passenger and parked his car a few blocks from the stand which had been assigned to him. The Court found he had slightly departed from his instructions, but that "he had some discretion as to how to act, at that time, in order to best serve his employer". If deceased in this case was vested with any such discretion, it is not revealed by the record. Counsel for defendant in support of his contention in the case above cited that the employee was acting within the scope of his employment, referred the Court to Brenner vs. Ford, 116 La. 550, 40 South. 894. In that case, the Court said the servant had acted contrary to his master's instructions, that he was on a mission of his own, and that, therefore, the master was not liable. Counsel also referred to cases of other States, wherein the Court found that the servant or servants had acted without authority or in disobedience to the instructions of the master, which the Court held, had the effect of absolving him from liability. The distinctions drawn by the Court in the case of Craft vs. Gulf Lumber Co. make it quite clear that when the employee acts without authority, in violation of his manifest obligations, and in disobedience to instructions given him by his master, as clearly appear in the instant case, the claimant can not recover. The demand of plaintiffs was therefore correctly rejected.