### No. 450

### First Circuit

___

### TAYLOR v.
### GULF REFINING CO. OF LA

___

### No. 449

### BORDE v.
### GULF REFINING CO. OF LA

___

### No. 451

### JORDAN v.
### GULF REFINING CO. OF LA.

___

(May 7, 1929.   Opinion and Decree.)
(June 10, 1929.   Rehearing Refused.)

___

Howth, Adams & Hart, of Beaumont, Texas, and Porteus R. Burke, of New Iberia, attorneys for plaintiffs, appellants.

Weeks & Weeks, of New Iberia, and J. S. Atkinson and F. E. Greer, of Shreveport, attorneys for defendant, appellee.

MOUTON, J. Millard T. Taylor, Guilliam Borde, Jr., and Conrad A. Jordan, employees of defendant company while going across Lake Dauterive in a boat on the 22nd of May, 1928, lost their lives by drowning in the lake. Their surviving widows have each brought suit for compensation against defendant, submitted to the trial court on the evidence adduced in this case.

The trial court, for reasons given in this case, rejected the suits in the three cases.

Plaintiffs have appealed.

The defendant company was at the time drilling for oil at Eagle Point in a swamp on the edge of Lake Fausse Point in the Parish of Iberia. The place was not accessible by land. For that reason the employees of the company were taken to Eagle Point by boat across Lake Dauterive from Dauterive Landing situated near the town of Loreauville. The employees in going to their daily work left Dauterive landing early in the morning and in the evening at about 5 or 5:30 left Eagle Point to return to the landing on their way back to their homes in Loreauville, where they lived.

Three boats were furnished to the employees by defendant company for their transportation across the lake, and which were provided with life preservers. These employees knew that these arrangements had been made for their transportation to and from their work.

One of the boats was known as the Mildred, the two others were under the management of Tony Broussard and George Angells for defendant company, both skillful and competent boatmen.

On the evening of May 22nd, before the termination of the day's work of Taylor, Borde and Jordan at Eagle Point, George Angells and Tony Broussard had left that place in their boats with other employees of the company on their way back to Dauterive landing. The Mildred, the other boat which was furnished to the employees by defendant, was then temporarily out of repairs and could not be used to carry the employees across the lake. Jordan, it seems was eager to return, and at his sug-

272

gestion was taken by Paul Vaughn with Taylor and Borde and three other employees in a small boat for the trip to the landing. The record shows that Broussard's boat returned to Eagle Point the same night and that they could have gone to the landing in that boat which was used for their conveyance, and which was to their knowledge, at their service.

It is true that the Broussard and Angells boats had seldom been used after coming from the landing for a return trip thereto, as appears from the record, but they were, however, used at times, and would have been available to the deceased if they had chosen to remain at Eagle Lake, where it is also shown that the company kept a house boat for the accommodation of their employees if they desired to remain at the camp over night. Instead of availing themselves of the means furnished by the company for their transportation in good boats provided with life preservers, they got into Vaughn's boat, a much smaller craft, and started on their unfortunate voyage across the lake. After going about one mile from Eagle Point, Vaughn's boat met Angells' boat which was coming back. Vaughn stopped his boat in close proximity to the other boat and was told that they were returning on account of rough waters on the lake. Vaughn would not heed the warning of danger ahead and without protest from deceased and his other passengers, continued on his trip across the lake. Not far from the point where he had been apprised of the conditions ahead of him, his little craft was submerged by the waves of the lake, sank, and the three employees, whose surviving spouses have instituted this suit, lost their lives.

In 10 A. L. R. 169, the general rule in cases of this character and which has prac-

tically found approval in almost every other jurisdiction is thus stated:

"It is generally held that when transportation is furnished by an employer as an incident of the employment, an injury suffered by an employee in going or coming in a vehicle so furnished by the employer and under his control arises out of and is within the course of his employment within the meaning of the workmen's compensation acts."

It clearly appears in this case that the Angells and Broussard boats had been furnished the deceased and its other employees by the defendant as an incident of their employment, and it is therefore evident that if they had lost their lives while going across the lake in one of these vehicles which were under the control of the company, that it would have been unquestionably liable, as it would be impossible to escape the conclusion that the injury had arisen within the course of their employment. The company, it is true, did not make it a condition of their contract of employment that they should use the Mildred, or the Broussard or Angells boats for transportation, and no other. The placing of life preservers on these boats, however, was very suggestive of the desire of the company that the means of conveyance provided for its employees should be taken advantage of by them. It was therefore perfectly optional with the employees to make use of these boats for their daily trips across the lake. The record is clearly to the effect that upon the occasion in question, the deceased, upon their own personal initiative, and without any suggestion whatsoever from any one connected with the company, voluntarily took passage with Vaughn for a trip to the Dauterive landing as hereinabove stated.

Vaughn, the record shows, was also an employee of defendant company, lived in

Loreauville, and usually left in the morning, but a little earlier than the other employees from Dauterive landing to go across the lake to Eagle Point where the company was drilling for oil. It is however, clearly shown that the Vaughn boat was under his own control, and that the company had no control or supervision over it, though it furnished some gasoline to run it, because transportation was furnished the other men. Vaughn, it is true, says that he sometimes took employees from Loreauville to work, but says he does not remember to have ever taken them back. They rode with him, he says, and he did not object. He further testified that he was not aware that Charmachael, superintendent of the company, knew that he had ever taken any of the employees to their work, and further, that he does not think he knew. He says in answer to a question from plaintiff's counsel that he does not know that the superintendent had ever told him not to take any employee along with him on these trips, and is certain that the superintendent never took passage with him on his boat.

The superintendent in his testimony is equally positive that Vaughn had his own boat, used it himself for his personal benefit, and not for the company; that he never was instructed nor was it his duty to carry any of the employees across the lake, and that the company had no control whatsoever over Vaughn's boat. It is shown by the superintendent and not contradicted, that Vaughn's boat was not even used to carry the equipments of the company across the lake, which he testifies were carried across in Tony Broussard's boat.

Counsel for plaintiff, in their brief, commend as the most just and comprehensive rule of law applicable to the facts of this case, the following rule quoted by the district judge in his opinion, viz:

"When the employee is injured while riding to or from his work in a conveyance provided by the employer, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment for the use of the employees, and is one which the employees are required, or as a matter of right, are permitted to use by virtue of the contract, the injury may be held to have arisen out of and in the course of the employment so as to entitle an employee to compensation."

In our statement hereinabove in this opinion, that the company would have been clearly responsible if the deceased had lost their lives while riding in one of the three boats furnished for their conveyance, we have brought this case under the first portion of the above quotation, where it is said that when transportation is provided for the employees by the implied or express terms of the contract, if the employee is injured while riding in such conveyance of the employer, the latter is liable.

The foregoing rule of law, which we stated would have fixed the responsibility of defendant company if the deceased had lost their lives in one of the boats which had been provided for their transportation, we think has been universally applied in compensation suits and is not disputed by learned counsel for plaintiff.

It is therefore apparent that counsel for plaintiff desire to bring their case under the operation of that part of the foregoing quotation, which, in referring to the first part of the rule which fixes the responsibility of the employer when the employee is being conveyed in a vehicle provided for him under the implied or express terms of the contract, proceeds and says in referring to the conveyance so provided, quoting:

"And is one which the employees are re-

quired, or as a matter of right are permitted to use by virtue of the contract."

If the employee is injured while riding in a conveyance which he is required or as a matter of right is permitted to use by virtue of the contract, the employer is liable under the portion of the rule hereinabove quoted.

In our foregoing recital of the facts which are pertinent to the issue presented for solution in this case, it is evident that there is no proof whatsoever to show or from which the deduction could be drawn that either by the implied or express terms of the contract in question or by virtue of that contract, the defendant company by inference or otherwise ever "required" or "permitted as a matter of right" any of the deceased or other employees the "use" of Vaughn's boat for their transportation across the lake or elsewhere.

In order, we presume, to bring their contention under that part of the quotation to which we have referred, counsel say in their brief that Vaughn had actually transported several employees on various occasions to and from their place of work. The fact is, Vaughn testifies, he did not remember taking the men back from work, but "sometimes to work." This testimony does away with the idea that he was making it a business to carry these workmen across the lake to and fro, as counsel is contending for.

Vaughn says further: "They rode with me and I didn't object." Obviously this testimony taken alone, or in connection with other parts of his evidence to which we have alluded, cannot be construed into meaning that these employees "as a matter of right" either impliedly or expressly or by "virtue of their contract" with defendant were "permitted" to use the Vaughn boat for transportation.

Counsel for plaintiff say further, that defendant and Carmachael its superintendent, knew that Vaughn was carrying these men across the lake. Carmachael certainly does not say that, nor any other one connected with the company. On this subject Vaughn, witness for defendant, says he does not know if Carmachael knew he had conveyed men across the lake, and the fact is, he said he did not think he knew. Hence, there is no support in the record for the statement of counsel that the company or its superintendent knew that Vaughn had taken employees across the lake. Even if the company or its superintendent had had that information, and had not objected to Vaughn giving passage to the employees, such knowledge could not be legally interpreted as a permission to these men "by virtue of their contract" or "as a matter of right" to use Vaughn's boat for transportation.

Counsel in their persistent efforts to bring their contention under the portion of the rule above quoted, say that the company had not promulgated any rules prohibiting their employees from using Vaughn's boat to go to and from their work. On the contrary, counsel say, it had expressly ordered Vaughn to put life preservers on his boat, referring to pages 13, 15 and 16 of the record. There is no testimony in reference to these life preservers on the pages enumerated by counsel, which undoubtedly is merely the result of an error on their part.

Carmachael, the superintendent does say however, that he offered Vaughn a life preserver for his use. He makes it very clear that he was simply asked to take it as a mere request for his personal safety, and that he was at no time compelled or required to use the life preserver.

On this question, Vaughn says the super-

intendent suggested that he put one of these life preservers in his boat for his own safety, which he construed to be for his individual protection, as very seldom, he says "I had any one else with me." Counsel have simply fallen into error in saying that defendant company or the superintendent had "expressly ordered" Vaughn to put life preservers on his boat.

We know that this erroneous statement on their part is altogether unintentional and must be ascribed to an exuberance of zeal for their client, which is most commendable for the presentation of a case, but not for its decision.

The mere request by Carmachael or suggestion to Vaughn that he should provide himself with a life preserver for his personal safety cannot possibly be converted into any instruction that "by virtue of the contract" the company had with its employees, "or as a matter of right" the employees were permitted to take passage with Vaughn in his boat.

True it is, as stated by counsel, that the company had not promulgated any rules prohibiting its employees from using Vaughn's boat. Because it had not forbidden its use to the employees, certainly cannot be construed into a "permit" to the employees, either impliedly or expressly, by "virtue of the contract" the company had with them or as "a matter of right" to use the boat. It is true that there was no such prohibition by the company, but the fact remains that there were three boats which had been furnished for the regular daily transportation of these employees and which were provided with life preservers. The means of transportation thus placed at the service of these employees certainly made it quite apparent to them that though the company did not pro-

hibit specifically the use of other means of conveyance, that it nevertheless expected them to go to their usual avocations in safety in the boats under its control and management. The fact that the furnishing of transportation for these employees formed part of their contract with the company cannot be reconciled with, and in fact repels the idea that either expressly or impliedly or "by virtue of their contract" or "as a matter of right" the employees were permitted to use the Vaughn boat for their trips across the lake.

We must therefore conclude that under the doctrine embodied in the foregoing rule found in the opinion of the trial judge, and which has received the unqualified approval of counsel for plaintiffs in their brief, that the three deceased employees nor any one of them, at any time, had been permitted, either expressly or impliedly, or as a "matter of right" or "by virtue of their contract" or otherwise to use the Vaughn boat as a conveyance to Eagle Lake where they were engaged in drilling operations for defendant company, and that the plaintiff in this case, and the other two in the companion cases are not entitled to a recovery under the compensation statutes of this state. This view of the case does away with the necessity of passing on the other contentions which have been adjudicated below adversely to the contentions of the plaintiffs.

The judgment in this case, also in the cases of Mrs. Edna Gonsoulin, Jordan and Mrs. Lela Borde, rejecting their respective demands against defendant, are for the foregoing reasons affirmed with cost.