### DAIGLE v. MOODY et al. *
### No. 4243.

Court of Appeal of Louisiana. Second Circuit.

April 5, 1932.

---

Foster, Hall, Barret & Smith, of Shreveport, for appellant.

Jackson & Smith, of Shreveport, for appellees.

DREW, J.

Alex Daigle, a son of plaintiff, Mrs. Joseph N. Daigle, and a brother of the plaintiff, Ella Daigle, was drowned during the afternoon of August 9, 1928, while attempting to swim across Red river near Benton, La.

The deceased was an employee of defendant, who was engaged in constructing "riprap" dikes in Red river, for the purpose of protecting the banks of said river from caving and washing away. A pile driver, mounted on a barge, was used in connection with the work. An anchor was required to hold the pile driver barge in proper position, and the anchor was attached to the barge with a long cable which ran out from a drum, controlled by an engine on the barge. Each day it became necessary to change the position of the pile driver, which necessitated the changing of the position of the anchor. The anchor was placed on a sand bar or in shallow water across the river from the pile driver barge. It was necessary for the employees, including the deceased, to cross the river daily for the purpose of changing the anchor. Defendant had boats for the purpose of transporting the employees from the barge across the river, and, when it became necessary to change the position of the anchor, the employees would be conveyed across the river in these boats, and, when the anchor had been changed, the boats would convey them back to the barge.

On the afternoon that deceased was drowned, he and other employees were conveyed across the river to change the position of the anchor, the boat remaining on that side to bring them back to the barge. Deceased and four other employees proceeded to move the anchor to a new position, placing it in water three or four feet deep. After the anchor had been moved, one of the employees, Mr. Edwards, went to get the boat to come and pick up the other men and convey them back to the barge. Before Edwards could get the boat and return, deceased, together with two other employees, Connelly and Talbert, decided to swim across the river to the barge. They waded a distance of fifty or sixty feet until they reached deep water and then started to swim across. Connelly was successful in reaching the barge, but Talbert and the deceased became exhausted about midstream.

Deceased called for help, and one of the employees jumped into a power boat and went to the assistance of deceased and Talbert. He was successful in rescuing Talbert, but Daigle drowned before he could be rescued.

Deceased's mother and sister, represented by her mother as curatrix, alleging dependency, sued for compensation under Act No. 20 of 1914, and amendments thereto, and, in the alternative, sued for damages under article 2315 of the Revised Civil Code.

Defendant filed an exception of no cause of action, basing the exception on the alleged fact that deceased was drowned in a navigable stream, and that the United States District Courts have exclusive original jurisdiction in such cases. The exception was overruled by the lower court, and defendant answered, admitting the employment of deceased and his duties under said employment, and contended that there can be no recovery in this case, under Act No. 20 of 1914, and amendments thereto, for the following reasons: (1) Because the evidence does not show that Alex Daigle lost his life while performing services arising out of and incidental to his employment in the course of his employer's business; and (2) that the accident was caused by Alex Daigle's deliberate failure to use adequate guard or protection against accident, which was provided for him.

The lower court in a written opinion held that deceased lost his life while performing services arising out of and incidental to his employment in the course of his employer's business, but held that the deceased deliberately failed to use adequate guard or protection against accident provided for him, and rejected the demands of plaintiff for compensation, as well as for damages, under article 2315 of the Revised Civil Code; and plaintiff prosecutes this appeal.

Defendant has not appealed or answered the appeal. Therefore the exception of no cause of action is not before us for decision.

Plaintiff, in brief, takes the position that the cause of action is under Act No. 20 of 1914, and amendments thereto, and does not urge her alternative claim for damages, under article 2315 of the Revised Civil Code.

If the employment came under the Employers' Liability statute, the remedy offered thereunder is exclusive. Section 34, Act No. 20 of 1914, as amended by Act No. 38 of 1918. Veasey v. Peters, 142 La. 1012, 77 So. 948; Philips v. Guy Drilling Co., 143 La. 951, 79 So. 549; Williams v. Blodgett Cons. Co., 146 La. 841, 84 So. 115; Liner v. Riverside Gravel Co., 13 La. App. 664, 127 So. 146.

If deceased had drowned while performing duties within the scope of his employment, plaintiff's claim would have been one for compensation exclusively. Under the facts in this case, plaintiff's only remedy was under the statute to claim compensation.

■ The rule laid down in the case of Piske v. Brooklyn Cooperage Co., 143 La. 456, 78 So. 734, and followed without variation by the courts of this state ever since, is that, in order to justify recovery by plaintiff in a suit under the Workmen's Compensation Act (Act No. 20 of 1914, and amendments thereto), the plaintiff· must prove that the accident occurred while the employee was performing services arising out of and incidental to his employment in the course of his employer's trade, business, or occupation. Also see Dimers v. Lassiter & Co., 7 La. App. 16.

■ The record discloses that deceased had been working for defendant on the same job for about three months, and that without a single exception he and other employees had been carried back and forth across the river in boats, when necessary to move the anchor. No one of them had ever attempted to swim the river on such occasions. On this occasion, the deceased had been carried across in a boat and the boat was there to bring him back. He did not wait for the boat, but attempted to swim the river, although he was fully clothed and had on brogan shoes. He was under no duty to swim the river and was not performing a service for his employer in doing so. The custom which had been invariably followed by him and the other employees was to return in the boat, and, instead of following the rule of his employer, which had at least become a rule by custom, he violated that rule and his duty to his employer, when he left a place of safety and went into a place of danger. Common knowledge tells us that to attempt to swim Red river, while fully clothed and wearing heavy· shoes, is to go into a place of danger. He left a place of safety assigned to him to wait for the boat, and unnecessarily exposed himself to great danger in attempting to swim the river. The courts of this state have held in similar cases that the employee was not performing services arising out of and incidental to his employment, and that an accident occurring under such conditions did not happen in the course of his employer's employment. Pierre v. Barringer, 149 La. 71, 88 So. 691; Gooding v. Beauregard Laundry Co., 9 La. App. 392, 120 So. 507; Liner v. Riverside Gravel Co., 13 La. App. 664, 127 So. 146; Nance v. United Fruit Co., 15 La. App. 316, 131 So. 738; Conaway v. Marine Oil Co., 162 La. 147, 110 So. 181; Webre v. Caire & Graugnard, 10 La. App. 775, 123 So. 168.

Schneider's Workmen's Compensation Law, vol. 1 (2d Ed.) pages 962, 963, 964 and 965, correctly states the rule of law, under the heading, "Accidents Occurring to Employees While Performing Acts for the Master Other Than Those Within Their Particular Line of Duty or Whose Conduct While Performing Their Duties to the Master Places Them Outside the Scope of Their Employment." It reads as follows:

"In discussing the question whether or not the accident arose out of the employment, the court said: 'A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. * * * It may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith. (Bryant v. Fissell, supra, p. 461 [of 86 A., 84 N. J. Law, 72].) It is stated that it may be difficult to conceive of any injury which arises 'out of' the employment which does not arise 'in the course of it'; but the converse, however, is not true. * * * The determination of this question presents one of the most difficult problems in connection with the act. It has been said that each case must depend upon its own circumstances and cannot be solved by any reference to any formula or general principle. (Glass on Workmen's Compensation Law, 40.) An accident only arises out of and in the course of a workman's employment when it arises from his doing or omitting to do some act within the sphere of his employment. If he chooses to step outside the sphere of his employment and to do something he is not expected or required to do, he does so at his own risk and is not under the protection of the act. * * * A sharp distinction is drawn between doing of a thing recklessly or negligently which a workman is employed to do and the doing of a thing altogether outside and unconnected with what he is employed to do, and if an accident happens in the former case, it arises out of and in the course of the employment, but not in the latter case. There are prohibitions which limit the sphere of employment. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent the recovery of compensation. A transgression in the former class carries with it the result that the man has gone outside the sphere. If the act which caused the injury was within the scope of the servant's employment, the mere fact that he had been expressly forbidden to do that act will not necessarily be fatal to his claim. Ordinarily, where workmen are not employed to work with machinery or in close proximity thereto, they are held not entitled to compensation for injuries received where they voluntarily put themselves in a position to be injured thereby. * * * An accident does not arise out of the employment if, at the time, the workman is arrogating to himself duties which he was neither engaged nor entitled to perform.

"But the courts are inclined not to be too severe upon workmen who are injured by attempts to further the master's business, although the attempt is in a line somewhat outside the precise scope of the employment. Where a servant is employed to do a certain service and is injured in the performance of

a different service voluntarily undertaken, the master is not held liable; also where a servant voluntarily and without direction from the master, and without his acquiescence goes into hazardous work outside of his contract of hiring, he puts himself beyond the protection of the master's implied undertaking, and if he is injured he must suffer the consequences. A master is not liable for the injuries to his servant unless the servant was at the time in the performance of some duty for which he was employed. (Stagg v. Edward Western Tea & Spice Co., 169 Mo. 489 [69 S. W. 391].) A volunteer is one who introduces himself into matters which do not concern him, and does, or undertakes to do, something which he is not bound to do or which is not in pursuance or protection of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as on an emergency. (Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750 [115 N. W. 636, 17 L. R. A. (N. S.) 334].) The scope of a servant's duties is determined by what he was employed to do and what he actually did with his employer's knowledge and consent, and an employee who was performing the same services he was in the habit of performing when he was injured is not a volunteer in performing such duties. (Dixon v. Chiquola Manf. Co., 86 S. C. 435 [68 S. E. 643].) These rules were briefly summed up in Moore v. Manchester Liners, [1910] A. C. 498, where it was stated an accident to an employee occurs in the course of employment when it takes place 'while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing.' "

And cites cases from almost every jurisdiction in the land, including the following Louisiana cases: Gooding v. Beauregard Laundry Co., supra; Liner v. Riverside Gravel Co., supra; Watson v. Holmes & Barnes, 7 La. App. 210; Johnson v. Provencal Turp. Co., 12 La. App. 78, 125 So. 321; Lawhorn v. A. W. Pettigrew, Inc., 12 La. App. 455, 125 So. 298; Pierre v. Barringer, supra.

In attempting to swim the river, deceased took a risk that was not incidental to his employment. It did not belong to nor was it connected with what he had to do in fulfilling his contract of service. Swimming the river was not within the sphere of his employment, and, when he chose to step outside the sphere of his employment and do something he was not expected or required to do, he did so at his own risk. The only reason he could have had for attempting to swim the river was for his own pleasure and was in no way a furtherance of his master's business. He introduced himself into matters which he had not been in the habit of doing with his employer's knowledge or consent, or which was not in pursuance of any interest

of his employer and was undertaken in the absence of any peril requiring him to act as in an emergency, and he was not acting within the scope of his employment. Schneider's Workmen's Compensation Law (2d Ed.) vol. 1, p. 969.

Plaintiff relies to a great extent on the case of McClendon v. Louisiana Central Lumber Company, 17 La. App. 246, 135 So. 754. In that case this court held that an employee was not outside the scope of his employment because he was negligent when riding in a vehicle provided for him to ride to his work by his employer. That rule is in no way in conflict with our holding here. In the McClendon Case, the employee was riding on defendant's train, furnished by defendant to transport its employees to work; and, while on said train, sat down upon his dinner pail, instead of the board seats around the side of the car. A jostle of the train caused the pail to overturn and the employee stuck a knife in his leg. He, at that time, was using the knife to fix a peg to replace a broken suspender button. We held that the employee was acting within the scope of his employment when injured.

In the case at bar, deceased was furnished a mode of transportation across the river and failed to use said conveyance furnished him by his employer. Taylor v. Gulf Ref. Co., 11 La. App. 270, 122 So. 162, 164. If deceased had used the conveyance furnished by his employer, and when in midstream, through some negligence of deceased, the boat had overturned and he had been drowned, the case would have been more parallel with the McClendon Case.

A sharp distinction is drawn between the doing of a thing recklessly or negligently which a workman is employed to do, and the doing of a thing altogether outside and unconnected with what he is employed to do. Should an accident happen in the former case, it arises out of and in the course of employment, but not in the latter.

Cases illustrative of the former case are: McClendon v. La. Cent. Lbr. Co., supra; Farris v. La. Long Leaf, 148 La. 106, 86 So. 670; Sears v. Peytral, 151 La. 971, 92 So. 561.

Cases illustrative of the latter are: Pierre v. Barringer, supra; Gooding v. Beauregard Lbr. Co., supra; Nance v. United Fruit Co., supra; Webre v. Caire & Graugnard, supra; Liner v. Riverside Gravel Co., supra; Taylor v. Gulf Ref. Co., supra.

The case of Taylor v. Gulf Refining Company, supra, is a much stronger case for plaintiff than the case at bar. The facts in that case are that defendant was drilling a well at Lake Farusse Point, in Iberia parish, at a place not accessible by land. The employees of the company were taken to and from work in boats furnished by defendant. Taylor and other workmen, wishing to cross the lake to go home, found two of defendant's boats gone

at the time on another mission, and the third boat out of repair. They proceeded in a boat belonging to one of their fellow workmen and used for his private purposes. On their way across the lake, the boat capsized and three of the employees were drowned. Their widows sued for compensation. The court held that defendant was not responsible for the reason that deceased failed to use the boats provided by their employer and undertook to cross the lake by other means; and, in answer to the contention that deceased was not prohibited by rules of his employer from using other means of conveyance than those furnished by his employer, the court said: "When the employee is injured while riding to or from his work in a conveyance provided by his employer, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment for the use of the employees, and is one which the employees are required, or as a matter of right are permitted to use, by virtue of the contract, the injury may be held to have arisen out of and in the course of the employment so as to entitle an employee to compensation." ·

We therefore find that deceased at the time he drowned was not performing services arising out of and incidental to his employment in the course of his employer's trade, business, or occupation, and there was no causal connection between his employment and his acts by which he lost his life.

We are of the opinion that either or both defenses urged by defendant are well founded and would bar recovery in this case. Under our finding as to the first defense, it is not necessary for a prolonged discussion of the second defense; neither is it necessary to pass on the right of the sister of the deceased to recover where the mother is living and claiming dependency.

The judgment of the lower court, in so far as it rejects the demands of plaintiff, is correct, and it is therefore affirmed, with costs.