144 So. 596

**DAIGLE v. MOODY et al.**

No. 31910.

Oct. 31, 1932.

Rehearing Denied Nov. 28, 1932.

Foster, Hall, Barret & Smith, of Shreveport, for applicant.

Jackson & Smith, of Shreveport, for respondents.

ODOM, J.

This is a suit under the Workmen's Compensation Acts of Louisiana, and is before us on a writ of review from the Court of Appeal, Second Circuit, 140 So. 842, 843.

Alex Daigle was drowned while in the employ of defendant. His mother and a sister, alleging dependency, brought suit to recover compensation for 300 weeks under section 8, Act No. 20 of 1914, as amended by Act No. 85 of 1926. In the alternative, they prayed for damages under article 2315 of the Civil Code. Both the district court and the Court of Appeal correctly held that the employment came under the Workmen's Compensation Acts, and that the remedy afforded thereunder was exclusive. It was also correctly held that the claim of the mother excluded that of the sister.

An exception of no cause of action was overruled, the defendant answered, and the case was tried on its merits. There is no dispute as to the facts, which are stated by the Court of Appeal as follows:

"The deceased was an employee of defendant, who was engaged in constructing 'riprap' dykes in Red river, for the purpose of protecting the banks of said river from caving and washing away. A pile driver, mounted on a barge, was used in connection with the work. An anchor was required to hold the pile driver barge in proper position, and the anchor was attached to the barge with a long cable which ran out from a drum, controlled by an engine on the barge. Each day it became necessary to change the position of the pile driver, which necessitated the changing of the position of the anchor. *The anchor was placed on a sandbar or in shallow water across the river from the pile driver barge. It was necessary for the employees, including the deceased, to cross the river daily for the purpose of changing the anchor.* Defendant had boats for the purpose of transporting the employees from the barge across the river, and, when it became necessary to change the position of the anchor, the employees would be conveyed across the river in these boats, and, when the anchor had been changed, *the boats would convey them back to the barge.*

"On the afternoon that deceased was drowned, he and other employees were conveyed across the river to change the position of the anchor, the boat remaining on that side to bring them back to the barge. Deceased and four other employees proceeded to move the anchor to a new position, placing it in water three or four feet deep. *After the anchor had been moved,* one of the employees, Mr. Edwards, went to get the boat to come and pick up the other men and convey them back to the barge. Before Edwards could get the boat and return, deceased, together

with two other employees, Connelly and Talbert, *decided to swim across the river to the barge.* They waded a distance of fifty or sixty feet until they reached deep water and then started to swim across. Connelly was successful in reaching the barge, but Talbert and the deceased became exhausted about midstream. Deceased called for help, and one of the employees jumped into a power boat and went to the assistance of deceased and Talbert. He was successful in rescuing Talbert, but Daigle drowned before he could be rescued." (Italics ours.)

The contention of defendant is that plaintiff cannot recover for two reasons:

(1) Because the evidence does not show that Alex Daigle lost his life while performing services arising out of and incidental to his employment in the course of his employment in the course of his employer's business, and.

(2) That the accident was caused by Alex Daigle's deliberate failure to use an adequate guard or protection against accident, which was provided for him.

The district court held that the first defense was not sustained by the evidence, but rejected plaintiff's demand on the ground that deceased had deliberately refused or failed to use an adequate guard or protection against accident, which was provided for him. The Court of Appeal reversed the ruling of the district court on the first defense, holding that under the facts shown:

"That deceased at the time he drowned, was not performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation, and there was no causal connec-

tion between his employment and his acts by which he lost his life."

It further held, however, that the second defense was good and affirmed the judgment of the lower court in so far as it rejected plaintiff's demands.

■ We approve the court's holding on the latter point. Section 28, Act No. 20 of 1914, the compensation statute, provides,

"That no compensation shall be allowed for an injury caused * * * (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him."

Both courts found, and the facts are not disputed, that defendant had provided boats to carry its employees across the river from the anchor placed on a sand bar to the pile driver barge on the other side. It is conceded that these boats were safe means of transport to the knowledge of deceased. He had been engaged in this particular kind of work for some time, and was familiar with the arrangement and means provided by his employer to transport the employees from one side of the river to the other. Just before deceased was drowned, on the same afternoon, he and other employees were conveyed across the river in one of the boats. He knew also that this boat was available to carry him and his companions back across the river for it was kept nearby for that purpose. A fellow employee, apparently to the knowledge of deceased, left the sand bar to get the boat for the purpose of transporting the crew across, but, before the boat reached them, deceased and two others attempted to swim across rather than wait for the boat. Defendant therefore knew that a safe means of transport was at hand, and his attempt to swim the channel instead of making use of the boat was a deliberate failure to use the boat, which under the statute was "an adequate guard or protection against accident provided for him." For that reason, "no compensation shall be allowed" for his death.

In the case of Farris et al. v. Louisiana Long Leaf Lbr. Co., 148 La. 106, 86 So. 670, 674, it was held that section 28, Act No. 20 of 1914, has no application in a case where the risk was not assumed deliberately but under conditions "which rendered it necessary for the employee to decide, instanter, as between two courses, either of which, so far as he was informed he was free to choose, the more efficiently, as he conceived, to perform his duty to his employer."

That case is distinguishable from the one at bar, in this, that here the employee was not called upon to decide and choose instantly between two courses. He was not being urged to cross the river quickly, and there was apparently no necessity for his doing so, nor had he been informed that he was free to choose to cross the river either by means of the boat or by swimming. He could not have thought that swimming the channel was as safe and efficient means of crossing as the use of the boat. His conduct was deliberate. He chose the less efficient means to cross. He deliberately failed to make use of the adequate guard or protection against accident. The case falls directly under the statute, which must be applied.

A case very similar to the one now under consideration, Taylor v. Gulf Refining Co., is reported in 11 La. App. 270, 122 So. 162.

There the defendant was drilling a well in a lake at a point not accessible by land. It provided three boats to transport its employees across the lake. At a time when one of the boats was out of repair and the other two were away on a trip, an employee wishing to cross the lake attempted to cross in a boat belonging to another employee and used by him privately. He was drowned, and the court held that no compensation was due by defendant. Pigott v. Raymond Concrete Pile Co., 8 La. App. 428, Willie v. Louisiana Long Leaf Lbr. Co., 8 La. App. 817.

⬛ 2. We do not approve the holding of the Court of Appeal that deceased at the time he was drowned had left the course of his employment, and that the case does not come under the provision of the statute to the effect that, in order to recover compensation, it must be shown that the accident occurred while the employee was performing services arising out of and incidental to his employment in the course of his employer's trade, business, or occupation. The court, in the course of its opinion, said:

"He [the deceased] did not wait for the boat, but attempted to swim the river. * * * He was under no duty to swim the river. * * * He left a place of safety and went into a place of danger * * * and unnecessarily exposed himself to great danger in attempting to swim the river. * * * In attempting to swim the river, deceased took a risk that was not incidental to his employment. * * * The only reason he could have had 'for attempting to swim the river was for his own pleasure and was in no way a furtherance of his master's business."

It is true, as the court said, that deceased did not wait for the boat and attempted to swim the river, that he was under no duty to swim the river, that he left a place of safety (on the sand bar), and went in a place of danger (the river), and that he exposed himself to great danger in doing so.

But the undisputed facts are that, in order for the deceased to continue his work for his employer, he had to cross the river in some way. He could not stay where he was and continue to perform the services for which he was employed. He had finished the task assigned him at the sand bar. His next work was at the boat on the other side of the river. The crossing of the river was but a part of the day's work; it was routine gone through every day and boats were provided for that purpose. If deceased had attempted to cross in one of the boats, it could hardly be said that his attempt to thus cross was not in the course of his employment. But it is held that, because he chose another means, another method of crossing which was less safe and attended with great danger, he departed from his course of employment. We do not think so.

It must be borne in mind that deceased's purpose in crossing the river was to resume his work, his regular employment, and not to do something on the side which he was not employed to do. This is conceded, but the court says that he swam as a matter of pleasure; that he would rather swim than ride in the boat. Perhaps so, but the fact remains that his purpose was to get back across and resume his regular work, and, that being true, it matters not what method he chose to get across the river, the attempt was in the course of his employment. He was expected and required to cross the river.

That was within the sphere of his employment.

The learned judges of the Court of Appeal quote at length from Schneider's Workmen's Compensation Law, vol. 1 (2d Ed.) beginning at page 962, where it is said:

"If he (the employee) chooses to step outside the sphere of his employment and to do something he is not expected or required to do, he does so at his own risk and is not under the protection of the act. A sharp distinction is drawn between doing of a thing recklessly or negligently, which a workman is employed to do and the doing of a thing altogether outside and unconnected with what he is employed to do, and if an accident happens in the former case, it arises out of and in the course of the employment, but not in the latter case."

This statement of the law is in exact accord with our own jurisprudence, and the Court of Appeal approved it, of course. But the error into which the court fell was in holding that, when deceased attempted to swim the river instead of waiting for the boat to carry him across, he stepped outside the sphere of his employment to do something he was not expected or required to do. In thus holding, the court overlooked the fact that the crossing of the river was a step which deceased had to take in order to do the very thing, the very work he was employed to do, and not something "altogether outside and unconnected" with what he was employed to do.

What the law-writers and courts mean by the doing of "something" outside of and unconnected with the employment is some kind of work, some task either for one's self or for another or the indulgence in something for the employee's own purposes. The word "something" has no reference to a step taken or a means employed in connection with or in furtherance of the work undertaken.

With the sole purpose of carrying on the work he was employed to do, the deceased adopted a careless, dangerous method. His negligence added risk to the employment, but did not constitute a departure from it.

From the foregoing conclusion, the further conclusion that the risk was incidental to the employment and that the accident arose out of it necessarily follows. A risk is incidental to the employment when it is connected with or belongs to what the workman has to do in carrying out his contract of service. There was a causal connection between the conditions under which deceased was required to do his work and the resulting injury, and for that reason the accident arose out of the employment.

This case falls squarely under our ruling in Sears v. Peytral, 151 La. 971, 92 So. 561, 562, where we said:

"That the accident arose out of and in the course of the employment appears from the fact that at the very moment it occurred plaintiff was proceeding on a mission for his master under his employment. The mere fact that he was proceeding negligently in the vehicle provided for that purpose, or in a manner therein that was contrary to instructions, did not place him outside of the scope of his employment."

The only difference between the cited case and the one at bar is that in the cited case the employee was proceeding negligently "in a vehicle" provided for him, and in the case at bar the employee was negligent in choosing a means to accomplish an end. The principle is the same.

In Garcia v. Salmen Brick & Lumber Co., 151 La. 784, 92 So. 335, 337, the court said, speaking of the Workmen's Compensation Law:

"Under that statute the liability of an employer is not to be determined by negligence or want of negligence."

The holding in the above-cited case was reaffirmed in Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248.

In the case of Brown v. Vacuum Oil Co., 171 La. 707, 132 So. 117, 119, we said:

"And this court has held that whether employer, employee, or fellow employee is guilty of negligence resulting in injury to employee is immaterial, as affects employer's liability under Employer's Liability Act"—citing the Salmen Brick Co. and Cady-McFarland Cases, supra.

The Court of Appeal cited in support of its conclusions Pierre v. Barringer, 149 La. 71, 88 So. 691; Gooding v. Beauregard Laundry Co., 9 La. App. 392, 120 So. 507; Liner v. Riverside Gravel Co., 13 La. App. 664, 127 So. 146; Nance v. United Fruit Co., 15 La. App. 316, 131 So. 738; Conaway v. Marine Oil Co., 162 La. 147, 110 So. 181; and Webre v. Caire & Graugnard, 10 La. App. 775, 123 So. 168.

In Pierre v. Barringer the court found as a fact that plaintiff was employed as a fire-

man, "and that his employment did not take him in the vicinity of the circular saw by which his hand was severely injured."

In Gooding v. Beauregard Laundry Co. the court found that the employee's duties did not require him to manipulate or even touch the dangerous machinery by which he was injured, but that he voluntarily undertook, without the knowledge of his superior, to manipulate the machine or to play with it.

In Liner v. Gravel Co. the employee was engaged to clear bayou banks near a dredge boat on the lake. Without being ordered to do so, he left his work, went to the boat, and volunteered to put a belt on a flywheel.

In Nance v. United Fruit Co. the employee was ordered to "stand by" and await the arrival of a derrick for loading a vessel, and was injured while attempting to board another vessel 600 feet away.

In Conaway v. Oil Co. a foreman of a gasoline station was accidentally shot by a fellow employee, and in Webre v. Caire & Graugnard the employee was injured while attempting to board a moving train in defiance of the instruction of his foreman and the rules of his employer.

In all these cases it was held that no recovery could be had because the injury did not arise out of and in the course of the employment. But the holding in those cases has no application to the case at bar. The facts in each were altogether different from those in the instant case.

For the reasons assigned, the judgment of the Court of Appeal is affirmed in so far as it holds that plaintiff's demands were properly rejected on the ground that de-

ceased deliberately failed to make use of an adequate guard or protection against accident which was provided for him. Costs of this writ to be paid by the applicant.

O'NIELL, C. J., dissents from the proposition that section 28 (3) of Act No. 20 of 1914 is applicable to a boat or other vehicle or means of conveyance.