## OSBORNE v. McWILLIAMS DREDGING CO., Inc., et al. *
### No. 16719.

Court of Appeal of Louisiana. Orleans.
Oct. 18, 1937.

Lewis R. Graham and Harry R. Cabral, both of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellees.

JANVIER, Judge.

This matter comes before us on appeal by Mrs. Earlene Osborne from a judgment dismissing, on exception of no cause of action, her suit brought under Act No. 20 of 1914, as amended, for compensation for the death of her husband, Leslie Osborne, who was drowned while on his way home by motorboat from the floating dredge on which he performed his duties when at work.

The employer, McWilliams Dredging Company, and American Mutual Liability Insurance Company, the workmen's com-

pensation insurance carrier, are made defendants.

It is alleged that the work in which the employee and the employer were engaged was of a nonmaritime nature.

The original petition has been several times amended, or supplemented, and from the various petitions certain allegations are pointed to by exceptors as showing that the accident in which Osborne met his death did not arise out of nor in the course of his employment. It is alleged that the employees who worked on the floating dredge were "expected to stay on the said dredge, when not actively at work * * *" and that the employer "furnished them with quarters and board thereon"; that the employer furnished regular transportation by boat from the dredge to the shore and back once each week, or in case of emergency. It is also alleged that the employer permitted the employees to go ashore during nonworking periods within their respective weekly terms or "shifts of employment," and that, since the employer did not furnish transportation for such voluntary and nonweekly trips, the employees who desired to make such trips found it necessary to secure independent transportation from the dredge to the shore, and that the employer did not prohibit this. It is also stated that it was during such a trip and while Osborne was in a boat not furnished by the employer that there occurred the collision which resulted in his being thrown into the water and drowned. It is not alleged that there was any emergency which required him to go ashore at that time, it being merely stated that he "decided to go ashore by means of a boat, so that he might then arrange to go to his home."

Exceptors rely upon the fact that Osborne was not on the premises of the employer and was not being transported in a boat furnished by them and was not making a trip which might have been considered as within the contemplation of the contract of employment, and they point to the well-recognized general rule which, in Walker v. Lykes Bros.-Ripley S. S. Co., Inc., 166 So. 624, 625, we stated as follows:

* * * "It is a general rule, in workmen's compensation cases, that the injury suffered by an employee in going to and returning from his employer's premises, where the work of his employment is

carried on, does not arise out of his employment so as to entitle him to compensation. See Ruling Case Law, Permanent Supplement, vol. 8; Thibodeaux v. Yount Lee Oil Co., 13 La.App. 591, 128 So. 709; Voehl v. Indemnity Ins. Co. of N. A., 288 U.S. 162, 53 S.Ct. 380-382, 77 L.Ed. 676, 87 A.L.R. 245."

Petitioner, however, believes that the alleged facts are such as to make applicable an exception to the general rule, which exception is also well recognized where the accident in which the employee is injured or killed while going to or from work results from a hazard peculiar to the neighborhood adjacent to the premises on which the work is performed, and the premises are so situated as to make the customary means of ingress and egress hazardous.

In Cudahy Packing Company of Nebraska v. Parramore, 263 U.S. 418, 44 S. Ct. 153, 155, 68 L.Ed. 366, 30 A.L.R. 532, the Supreme Court of the United States considered such a situation and held that compensation was due because "the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard."

Where the employer's premises are so situated, the application of the Compensation Law does not cease as soon as the employee leaves the premises, but he remains under its protection while he is in that neighborhood in which persons are subjected to those local hazards which are not common elsewhere, and with which the employee must come into contact while on his way to and from the plant or premises at which he works. This exception and the sound logic on which it is based have been so completely discussed and explained in the Parramore Case, supra, the Walker Case, supra and in Thomas v. Shippers' Compress & Warehouse Co., Inc. (La.App.) 158 So. 859, that we need not again discuss the subject.

Plaintiff points out that, since the dredge was a floating one, surrounded on all sides by water, the employees, in going to and from it, were subjected to the unusual hazards attendant upon transportation by water and were thus within the contemplation of the Compensation Laws during the entire period of such transportation and whether upon vessels furnished by the employer, or upon private vessels

owned by third persons and chosen by the employees.

■ Exceptors concede that, had the accident occurred while the employee was in a vessel furnished by the employer, there would be liability in compensation, and they also concede that, if the employer had furnished no transportation, there could be liability for accident sustained in proximity to the dredge on such trips as may have been required by the employer, or as may have been within the contemplation of the contract of employment. Exceptors recognize the fact that at regular intervals, or in emergencies, employees must return to their homes, and it thus must be admitted that trips made at these regular intervals or in emergencies are within the contemplation of such contracts, but they maintain that the accident here did not occur on such a trip, but, on the ·contrary, on one which was not contemplated by the contract of employment, but which was during a period in which, as plaintiff herself alleges, the employee was "expected to stay on the said dredge."

The contention is a most interesting one. If an employer furnishes no sleeping quarters for his employees, he must be held to contemplate that they will return to their homes at the end of each work day. In so returning, if they are injured by such a hazard as is not found except in the neighborhood of the place of employment, then there is liability, even though the accident does not occur on the premises. But if, on the other hand, the employer provides sleeping quarters for his employees and, in employing them, states that he expects them to stay on the premises during the week, but that at regular periods at the end of each week he will transport them to their homes, then, if any one of the employees, during the week, determines to make a trip home in a conveyance selected by him, such a trip is not within the contemplation of the contract of employment and there should be no liability for an injury sustained in the course thereof. According to the various petitions, that was the agreement here. Note the following allegations:

"(1) That the employees * * * were expected to stay on the said dredge, when not actively at work. * * *"

"That * * * the employer * * * did not furnish regular transportation * * * except once a week * ' * * or ·in case of emergency.

"That (the employer) permitted its employees to go to their homes on shore at any time after their shift of employment was completed, and did not require them to wait for such visits until the change of their shift of employment.

"That whenever any employee * * * wished to make a trip to his home, except at the weekly time or period * * * it was necessary that the employee secure his own transportation. * * *"

■ It is not contended that there was any emergency which called Osborne to his home and it is conceded that the trip was not one of the "once a week" trips which the contract of employment contemplated. It was thus a trip made during a time at which, so far as the wishes of the employer were concerned, the employee was "expected to stay on the * * * dredge." We see no reason which should prevent an employer from making such a contract. The employer so located realizes the danger of unrestrained movement in unseaworthy craft back and forth between the shore and the floating premises. He therefore says to his employees that he will board and lodge them and that he expects them to remain on the boat during the weekly shifts, but that, if they wish to go home, they may do so at their own risk and after securing their own vehicle of transportation, but that, recognizing that they must return at regular intervals, he will furnish transportation at those times.

But plaintiff argues that the petitions do not allege such facts and contends that the word "expect" cannot be given the meaning which it seems to us to have here. It is said that the word evidences no more than a hope or a desire. We cannot so interpret it where it is used by an employer to an employee. The employer says, "I expect you to do so and so." Surely the word means more than merely hope. But, even if it be given the meaning contended for by plaintiff, it cannot be gainsaid that its use clearly indicates that the employee knew that the contract contemplated his remaining on the dredge and did not contemplate that, as a necessary incident to his employment, he should make voluntary trips back and forth between the dredge and the shore in vehicles selected by himself. In the Parramore Case, from which we have quoted, it is said plainly that whether or not any particular trip to and from the premises is included within the coverage of the Compensation Law depends

upon whether it is within the "contempla-, tion" of the contract. In Taylor v. Gulf Refining Company, 11 La.App. 270, 122 So. 162, 165, the Court of Appeal for the First Circuit, in discussing the question of whether any particular trip was within the contemplation of the contract, said: "The fact that the furnishing of transporation for these employees formed part of their contract with the company cannot be reconciled with, and in fact repels, the idea that either impliedly or expressly or 'by virtue of their contract,' or 'as a matter of right,' the employees were permitted to use the Vaughn boat for their trips across the lake."

The Vaughn boat was one not furnished by the employer, but secured by the employee himself.

We conclude that, since the trip on which the fatal accident occurred was not one which was within the contemplation of the contract, Osborne was not within the protection of the Compensation Law at that time.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.