|, CARAWAY, J.,
dissenting.
I respectfully dissent.
The nightlife excursions of the Shoney’s employees can easily be recognized as outside the coverage of worker’s compensation. Nevertheless, in this case, Plaintiff was not injured while on the dance floor, and even the majority acknowledges that upon beginning the return trip to Monroe, the two employees had ended their personal deviation and had again re-entered the course of their employment. That course of employment for these salaried managers, with wide discretion, had led them to drive to Baton Rouge from Monroe on the morning of April 2. The task was to be an all day employment event particularly when the eight hours of travel time were part of their employment duty. Plaintiffs testimony indicated that she was also required by her employment to be back in Monroe by the time of an early delivery to her restaurant the following morning, April 3.
After four in the afternoon as the meeting ended, Plaintiff and Forwood had already concluded a long day. They briefly drove around Baton Rouge to inspect another Shoney’s location and then decided to invite Weeks to dinner. Weeks’ status at Shoney’s was important. She was the administrative assistant to Shoney’s Louisiana Director of Operations in Baton Rouge. Plaintiffs development of a favorable relationship with Weeks was important to Plaintiffs role as a manager. Plaintiff was traveling with Forwood, her prior boss, and Forwood’s friendship with the younger, Weeks, clearly extended the night longer than prudence would allow.
With these business-related circumstances intertwined with their personal entertainment, Plaintiff and Forwood ad *312 mittedly re-entered the course of their employment for their return trip home. Certainly, the majority does not hold ladinner against these employees. If Plaintiff and Forwood had commenced their four-hour return trip to Monroe at seven, eight, maybe even nine o’clock at night, an accident suffered by Plaintiff in the course of her employment due to her co-employee’s sleep, inadvertence or poor driving skill would not barr worker’s compensation recovery. If the parties had . spent the night in Baton Rouge and had the same type of accident due to For-wood’s fault the following morning returning to Monroe, Shoney’s admits worker’s compensation coverage would have applied.
A harder question yet under the majority’s analysis would have arisen if an accident due to a third party’s negligence had occurred a block from Plaintiffs home in Monroe at five in the morning on the return trip. I raise that question to demonstrate what I view as the error in the majority’s opinion. In the midst of the two-pronged test of course and scope, the majority has added in a fault notion — the increased risk of harm caused by the employees’ bad choices. This blurs the course and scope analysis in a body of law where fault is not usually a consideration.
As this court and others recognized early on in the development of law, “[n]egli-gence of an employee is not a defense to an action to recover compensation ..., except insofar as it is Comprehended within the special defenses contained in the [Act].” Liner v. Travelers Ins. Co., 41 So.2d 804, 808 (La.App. 2d Cir.1949). Those special defenses, such as drunkenness [La. R.S. 23:1081(l)(b) ] or deliberate failure to use a safety guard [La. R.S. 23:1081(l)(c) ], are not present in this case.
A few months after the Kern ruling, Daigle v. Moody, 175 La. 853, 144 So. 596 (1932) was decided by the supreme court. It is a significant case of an employee’s costly course of action which greatly increased his risk of harm. While working on a pile driving barge, the employee made a very bad choice by [ selecting to swim the river instead of using the boat provided by his employer. The supreme court found the employee in the course and scope of employment, ruling:
... If deceased had attempted to cross in one of the boats, it could hardly be said that his attempt to thus cross was not in the course of his employment. But it is held that, because he chose another means, another method of crossing which was less safe and attended with great danger, he departed from his course of employment. We do not think so.
It must be borne in mind that deceased’s purpose in crossing the river was to resume his work, his regular employment, and not to do something on the side which he was not employed to do. This is conceded, but the court says that he swam as a matter of pleasure; that he would rather swim than ride in the boat. Perhaps so, but the fact remains that his purpose was to get back across and resume his regular work, and, that being true, it matters not what method he chose to get across the river, the attempt was in the course of his employment. He was expected and required to cross the river. That was within the sphere of his employment.
* Mi *
With the sole purpose of carrying on the work he was employed to do, the deceased adopted a careless, dangerous method. His negligence added risk to the employment, but did not constitute a departure from it.
Id. at 598-599. Plaintiffs fateful attempt to return to Monroe was likewise a bad choice, but nevertheless squarely within the sphere of her employment which had taken her that day to Baton Rouge.
Even under the fault analysis given by the majority, the fact that Plaintiff was a passenger in Forwood’s vehicle makes a *313 subtle but important difference on the choices she could make that evening. While she never complained early in the evening and was content to make the rounds with Forwood and Weeks, she was four hours away from her home and somewhat at the mercy of her driver’s decision to return home. To that extent, Plaintiffs situation is closer to those settings where an employee, being transported as a passenger by a co-employee, is not charged with the deviation from the employer’s mission by the co-employee who has control over the operation of the vehicle. See, Jagneaux v. Marquette Casualty Co., 135 So.2d 794 (La.App. 3d Cir.1961) and cases cited therein. In [4any event, the majority recognizes that the deviation in this case had ended and that both employees had re-entered the course of their employment.
The second prong of the Kern test was more recently explained by the supreme court in Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349 (La.1992). The court said:
“The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment.”
The risk of injury due to an auto accident, though somewhat neutral in its character, was greater for the Plaintiff because her employment required that she make the long trip to and from Baton Rouge. She was returning to Monroe under the added pressure of continuing her work at Shone/s the next morning. The employees’ personal deviation for their entertainment in Baton Rouge had ended, and though their choices to re-enter the course and scope of their employment can be faulted, I would hold that compensation should not be denied.