LAND, Justice.
 

 This is a suit by Mrs. Earlene Osborne, widow of Leslie Osborne, for compensation for his death, alleged to have been caused by accidental drowning, while in the employment of the McWilliams Dredging Company, Inc.
 

 The suit was brought in the civil district court for the parish of Orleans against defendant company and its insurance carrier, the American Mutual Liability Insurance Company, and judgment was prayed for against defendants in the sum of $5,-950, in solido, together with interest on that amount from February 2, 1936, until paid,' and for all costs of suit.
 

 Plaintiff’s suit was dismissed in the-civil district court for the parish of Orleans on an exception of no right or cause of action, and, on appeal by plaintiff, the judgment of the lower court was affirmed by the Court of Appeal for the parish of Orleans. 176 So. 410, 412.
 

 The case is now before us under a writ of certiorari herein granted.
 

 An original petition and three supplemental petitions were filed in this case by plaintiff. Exceptions of no cause or right of action were pleaded against the original petition, and against the original petition, as amended.
 

 In the original petition it is alleged:
 

 “2. That prior to and on February 2nd, 1936, petitioner’s husband, Leslie Osborne, was employed by the McWilliams Company, as assistant engineer on its Dredge ‘Gulfport’ at a salary of forty-two dollars ($42.00) per week;
 

 “3. That at said time, the said Dredge and the employees thereon were engaged in a non-maritime operation, viz: construction of a levee on Dauterive-Fish Island in Lake Dauterive in Iberia Parish, Louisiana, under contract with the United States Government.
 

 “4. That the employees of said Dredge were expected to stay on the said dredge, when not actively at work; the McWilliams Company furnished them with quarters and board thereon, but allowed them to go to shore on some occasions when their necessities might dictate.
 

 “5. That the McWilliams Company furnished transportation for its employees on the said Dredge from the dredge to the shore at certain hours, and that boats were the only means of transportation from said dredge to the shore.
 

 
 *673
 
 “6. That on the morning of February 2, 1936, shortly after his shift was over, plaintiff’s husband who had been continuously quartered on said boat in connection with his'employment since January 30th, 1936, decided to go ashore by means of a boat, so that he might then arrange to go to his home.
 

 “That thereupon, he embarked in a motorboat owned and driven by one Clyde Barrow, a fellow employee on said dredge, the boat furnished by McWilliams Company not then being available; that shortly after the said boat had started from the said dredge, there was a collision between said boat and another boat driven by one Eugene Smith, and as a result of said collision, petitioner’s husband was thrown into the water and was killed by drowning.”
 

 An exception of no right or cause of action was pleaded by defendants against the original petition, which was permitted by the trial judge to be amended as to paragraph 6, as follows:
 

 “That on the morning of February 2, 1936, shortly after his shift of employment on defendant’s dredge was completed, her said husband embarked on a boat owned and operated by Clyde Barrow, for the purpose of going to his home, which was on the other side of Lake Dauterive, and at the time of" the collision, described in the original petition herein, the said boat had just left the dredge and was only a few hundred feet from the shore of Lake Dauterive where the defendant’s dredge was located.”
 

 Plaintiff also filed the following supplemental petition:
 

 “IX. That on Feb. 2, 1936, petitioner’s husband and one Clyde Barrow left the Dredge Gulfport in a small boat owned by Clyde Barrow, for the purpose of going to Dauterive Landing- so that he could disembark and then go to his home from Dauterive Landing.
 

 “X. That said Barrow’s boat was proceeding on the direct and regular course from the said Dredge to Dauterive Landing and while so proceeding it was run into by a boat operated by one Eugene Smith and as a result of said collision, petitioner’s husband and said Barrow fell out of said boat and both of them were drowned.
 

 “XI. That the boat operated by Eugene Smith was proceeding on the regular course and usual course from Dauterive Landing to the Dredge Gulfport when it collided with the boat of said Barrow.
 

 “XII. Petitioner alleges that the said collision occurred within a few minutes after Barrow’s boat left the Dredge at a point not more than 500 feet from said Dredge.
 

 “XIII. That the said Dredge was moored a short’ distance out from shore sucking up and pumping earth in to shore for a levee.”
 

 (1) The Court of Appeal has maintained the exception of no right or cause of action in this case mainly upon the allegation, as stated in its opinion:
 

 
 *675
 
 “‘(1) That the employees * * * were expected to stay on the said dredge, when not actively at work.’ ”
 

 The full allegation made by plaintiff in paragraph 4 of the original petition is:
 

 “That the employees of said Dredge were expected to stay on the said dredge, when not actively at work; the McWilliams Company furnished them with quarters and board thereon but allowed them to go to shore on some occasions when their necessities might dictate.”
 

 As shown by the last supplemental petition filed in the case, the allegations contained in paragraph 4 of the original petition have been supplemented and changed by the following allegations:
 

 “(1) That the McWilliams Dredging Company, the employer herein, did not furnish regular transportation to its employees between Dauterive Landing and the Dredge ‘Gulfport’ except once a week when their shift of work was changed or in case of emergency.”
 

 “(2) That the said employer did not prohibit its employees from using their own means of transportation between the dredge and Dauterive Landing.
 

 “(3) That the company permitted its employees to go to their homes on shore at any time after their shift of employment or services was completed, and did not require them to wait for their visits to their homes until the change of their shift or watch of employment.
 

 “(4) That whenever any employee on the said dredge wished to make a trip to his home, except at the weekly time or period when the hours or watch of employment was changed, it was necessary that the employee secure his own transportation from the dredge to Dauterive Landing and from Dauterive Landing back to the dredge.
 

 “(5) That the facts of which the foregoing allegations are made, have only lately been discovered by the attorney for petitioner, and were not known to him and were not discoverable by him at the time the original petition was filed herein.”
 

 The only evidence as to the terms and conditions of the contract of employment in this case between the dredging company and its employees appears in the above allegations of plaintiff’s petition. The contract itself is not attached to plaintiff’s petition, and, as the case is before us on an exception of no right or cause of action, there is no testimony in the record as to the stipulations contained in this contract.
 

 Under plaintiff’s allegations as to the contract, which must be accepted as true in passing on the exception of no right or cause of action, Leslie Osborne had the full permission' of his employer to leave the dredge to visit his home, and full permission to go in the motorboat owned and driven by Clyde Barrow, a fellow employee. This was the method of transportation used by the employer himself. Besides, plaintiff has alleged “that the company permitted its employees to go to their homes on shore at any time after their shift of service was completed, and that shortly after his shift was over, plaintiff’s husband decided to go ashore by means
 
 *677
 
 of a boat, so that he might then arrange to go to his home.”
 

 There is not the slightest intimation in the allegations of plaintiff’s petition that, when the employee furnished his own transportation, he was acting outside the scope of his employment and at his own risk and peril, nor is there anything in these allegations from which such conclusion can be reasonably deduced.
 

 The error into which the Court of Appeal has fallen in this case is in deciding the case upon the allegation in paragraph 4 of the original petition, which is quoted in this opinion as follows:
 

 “(1) That the employees * * * were expected to stay on the said dredge, when not actively at work.”
 

 The conclusion reached, therefore, by the Court of Appeal, that as Osborne was required by his contract “to stay on * * * dredge,” his trip was not within the contemplation of the contract, and his death did not arise out of or in the course of his employment, is, in our opinion, erroneous, in the light of the contract as disclosed by the allegations of the last supplemental petition.
 

 It is a self-evident proposition of law that a supplemental petition cannot be ignored in deciding an exception of no right or cause of action; nor can allegations in an original petition, which have been changed by subsequent pleading, be made the basis of a decision by a court in maintaining such exception.
 

 Our conclusion is that plaintiff’s petition sufficiently discloses a right and cause of action, whatever the facts may be upon • production of the contract between the dredging company and its employees upon a trial on the merits.
 

 It is therefore ordered that the judgment of the Court of Appeal for the parish of Orleans, and the judgment of the civil district court for that parish, maintaining' the exception of no right or cause of action in this case, be and they are hereby annulled and reversed.
 

 It is now ordered that this suit be remanded to division B of the civil district court, and be reinstated on the docket of that court, and be proceeded with in due course and according to law.
 

 It is further ordered that defendants McWilliams Dredging Company and American Mutual Liability Insurance Company pay the costs of this proceeding.
 

 ROGERS and ODOM, JJ., dissent