TATE, Judge.
On pulling a handswitch, plaintiff Ash-lock received a severe electrical shock on July 6, 1952 in the course of his employment with the Rowan Drilling Company, Inc. He was hospitalized for six days. The doctors discharged him as without residual disability after six weeks, for which Ashlock received full compensation. On July 6, 1953, Ashlock filed this demand for workmen’s compensation for total and permanent disability. After trial, his suit was dismissed, and he appeals.
Chiefly factual questions are raised: is Ashlock suffering from constricted vision as he claims; and if so, was this a result of the accident?
Plaintiff claims that permanent damage was caused to the nerves affecting vision by the passage of high-voltage electricity through his body at the time of the accident. Allegedly as a result thereof, Ash-lock’s peripheral field of vision is seriously contracted or constricted.
As explained by the medical specialists herein, the effect of such a constricted visual field is to confine the vision of the affected person in the same general manner as though he were looking through a double-barrelled shotgun. Compared to normal eyesight, he may see just as well and for the same distance in front of him, but he may not simultaneously perceive as wide or high a field of vision.
Three extremely competent eye specialists testified: Dr. J. W. Rosenthal, for plaintiff; Dr. Rudolph Ellender and Dr. Albert Braunstein, for defendants.
These doctors are in virtually complete agreement that Ashlock’s eyes were organically within normal limits and displayed no objective pathology of traumatic damage. Plaintiff’s visual acuity, slightly less than normal, could be corrected with relatively weak lenses and was not significantly different at trial than when examined before entering the employ of Rowan five months before the accident. Likewise, all doctors agreed that the tortuosity (twistiness) of Ashlock’s optic blood vessels was not significant or of traumatic origin.
These doctors all agreed that Ashlock suffered from some degree of photophobia, or light sensitivity. Doctors Ellender and Braunstein found this photophobia very minor, and satisfied themselves that Ash-lock’s reactions to direct and indirect lighting followed no recognizable pattern and that Ashlock was greatly exaggerating such complaints, i. e., was malingering. Dr. Rosenthal felt photophobia could result from electrical shock; Dr. Braunstein felt Ashlock’s light sensitivity could not result from the type of electric shock sustained. We feel, in any case, non-erroneous the District Court’s determination that the al *353 leged photophobia’s significant existence, disabling nature, and traumatic causation were not preponderantly proved by the evidence.
However, Dr. J. W. Rosenthal found Ashlock’s visual field markedly constricted, to about one-third of the normal person’s. Likewise using approved testing techniques and instruments, Doctors Ellender and Braunstein, found that the perimeter charts of the field of Ashlock’s vision showed within reasonable limits the same constriction of the visual field as found by Dr. Rosenthal, These perimeter charts result from recording the patient’s verbal responses as to what he can see.
In view of Ashlock’s hesitant cooperation in these tests, and the certain malingering previously noted concerning complaints of light sensitivity, Dr. Braunstein flatly characterized Ashlock as a malingerer in this regard also. Dr. Ellender likewise noted that such responses were subject to some degree of voluntary control. '
Nevertheless, as able counsel for plaintiff persuasively urges,'the close correlation of the results of these perimetric vision charts —taken on several occasions, over an extended period of time, and by different eye-specialists, but showing the' same general pattern of the constricted visual field —indicates a reasonable probability that plaintiffs visual field is constricted as he claims, and as the results of the tests indicate. Doctors Ellender and Braunstein admitted the difficulty of such consistent simulation.
But accepting that plaintiff has borne the burden .of proving this visual,dis-function or disability, to recover he must still prove that this condition is a result of, or was aggravated by, the industrial accident sustained in defendant’s employ;
Plaintiff’s claim of medical disability can be most succinctly summarized by Dr. Ro-senthal’s testimony that “there is enough constriction present to indicaté that some trauma had occurred to his visual field” and thát this condition “could be * * * the result of electrical shock.” Dr. Rosenthal was, of course, unable to ascribe the condition to any specific trauma or to fix the onset of the condition. The other medical witnesses likewise agreed that electric shock could produce such nerve damage to cause such constriction of the field of vision; they greatly minimized the possibility thereof, however.
If believed by the District Court as corroborated by surrounding circumstances, Ashlock’s own testimony that never before and always after the industrial accident had he been so afflicted, would most prob,ably sufficiently have proved the disability’s origin in this industrial accident, see e. g., Zito v. Standard Accident Ins. Co., La. App. 1 Cir., 76 So.2d 25.
But the preponderance of the evidence in the record on this factual issue supports the able District Court’s determination that Ashlock did not prove any loss of visual- function due to this indus-r trial accident.- Rather than corroborating, the surrounding circumstances cast considerable doubt on any causal relationship of the accident to Ashlock’s present condition.
Plaintiff Ashlock was discharged as medically cured six weeks after the accident, and his compensation was terminated. In about October, 1952, he says he went to the New Orleans office of his employer’s compensation insurer with complaint of continued eye-trouble and was unsuccessful insofar as obtaining further compensation. Ashlock made no further move, either to obtain medical advice or workmen’s compensation, until he was referred by legal counsel he retained to a general surgeon for examination oh May 24, 1953, about eight months after his medical discharge. At this initial medical examination his sole complaints were headaches and nervousness. This physician recommended further examinations by a neurologist and an eye specialist,.which latter discovered that Ashlock’s visual field was constricted and fitted him for the first time with optical lenses on July 2, 1953. -
*354 Following, the termination of compensation, Ashlock had travelled with a rodeo and run a contracting company, allegedly in a supervisory capacity; there is testimony in the record, however, that Ash-lock did considerable bronco-busting, and ,a.s contractor personally ran a bulldozer frequently. Ashlock had been engaged in work similar to these occupations for about 8 years prior to his employment with Rowan. It is of some interest that over Ash-lock’s right eye is a scar which he stated had been present since childhood, although allegedly his parents had never told him what had caused it, nor had he ever asked them. Ashlock’s sworn testimony also contained quite a few willful inaccuracies, indicating possibly less than the highest regard for his solemn obligation to tell the truth under oath.
We, like the District Court, note Ash-lock’s apparent failure to find significant or disabling or to complain of this constriction of vision allegedly caused by the accident, until long after the accident when a medical expert found the condition existed. We feel the District Court’s determination is correct that Ashlock did not satisfactorily prove by credible evidence that this condition originated with the industrial accident herein.
By amended petition filed in this court, plaintiff-appellant seeks attorneys fees and penalties for arbitrary nonpayment of compensation under LSA-R.S. 22:658. In view of our disposition of the main demand, it is unnecessary to decide whether the statutory discretion to do so should be exercised to permit amendment at this stage of the proceeding, see LSA-R.S. 23:1315; Osborne v. McWilliams Dredging Co., 189 La. 670, 180 So. 481; Clark v. Employers’ Liability Assur. Corp., La.App. 1 Cir., 27 So.2d 464; Mitchell v. Sklar, La.App., 196 So. 392.
For the above and foregoing reasons, the judgment, of the District Court herein is affirmed. .
Affirmed.