## LANDRY v. LOUISIANA HIGHWAY COMMISSION.

### No. 1294.

Court of Appeal of Louisiana. First Circuit.
March 6, 1934.

L. L. Morgan, of Covington, and E. R. · Stoker, of Baton Rouge, for appellant.

Hawkins & Pickrel, of Lake Charles, for appellee.

LE BLANC, Judge.

The defendant, Louisiana highway commission, has appealed from a judgment in the lower court which awarded compensation to the plaintiff at the rate of $8.07 per week for the period of not more than 400 weeks plus the sum of $150 for surgical fees. The rate is smaller than was demanded by the plaintiff, but as it is conclusively shown that his daily rate of pay was less than alleged by him, plaintiff makes no complaint, being satisfied with the judgment as it stands.

There are two issues raised by the defendant's answer. The first is as to whether or not the plaintiff sustained an injury from an accident arising out of and in the course of his employment and the second is with regard to the nature of his injury and the extent of his disability therefrom. Other points were raised by the defendant during the trial of the case and testimony admitted subject to the objections urged by plaintiff's counsel. We will refer to these only briefly in the course of this opinion.

Plaintiff was employed as a graderman on state route designated as No. 105 leading north from the town of Welsh in the parish of Jefferson Davis. He belonged to unit No. 18 of which P. E. Louviere was the foreman. On the day plaintiff was injured, only one other laborer besides him and Louviere, Carl McMillan, belonged to the crew which constituted this unit. Their work consisted of grad-

ing and maintaining this particular route which extended several miles north to where it joined another route referred to as the Pelican highway. At a point seven miles north of Welsh, it intersected another state route which another crew over which a Mr. Ramsey was foreman, maintained.

The crews referred to kept their equipment in a barn which was so situated with relation to the roads they had charge of, as to permit them to leave the barn in the morning, grade one side of the road on their way from the barn and the other side on their return. Their day's work was one of nine hours, the "knocking-off" time being either 4 or 4:30 in the afternoon, depending on whether they took thirty minutes or an hour off for lunch. If they reached the barn before "knocking-off" time, they were expected to complete the day's work in cleaning and greasing the equipment which consisted principally of a tractor and a grader, and of doing general clean-up work around the barn. They went to and came from work on the tractor and grader used, this being the usual transportation furnished by the employer. Louviere, however, asserts most positively that in the event something happened and they had to leave the tractor on the road, his instructions were to get back the best way he could. These instructions he says came from E. M. Scarborough, maintenance superintendent over both the crews referred to herein. Mr. Scarborough denies that he gave any such instructions and that the only means of transportation supplied was the equipment on which the crews went to work. Louviere's testimony strikes us as being more correct as it is hardly reasonable to suppose that if there was a breakdown of the equipment late in the afternoon seven or eight miles from the barn and it was impossible to have it repaired that day, that these men would be expected to walk back home that distance.

On the day that plaintiff sustained an accident, unit No. 18 had been working on their route and when they reached the point where it intersected with the road Ramsey had charge of, the latter told Louviere that his equipment was out of commission and asked that he grade his road for him on the following day as Louviere would have time, by leaving his equipment at that point, to pick it up there the following morning, do Ramsey's work and grade the rest of his own road on his way back in the afternoon. Louviere says that he was careful to ask Ramsey if he had spoken to Scarborough about it and that Ramsey answered him that he had and that Scarborough told him it would be all right. Scarborough says that his instructions were positive about taking the machinery back to the barn each night so as not to leave it exposed to the weather. In this connection it appears a bit significant that Ramsey was not called as a witness by either side. It seems that he could have furnished corroborating proof on one side or the other on this point. Be that as it may, however, it is reasonable to suppose that emergencies did arise at times when it was either impossible, or better from a standpoint of economy, to store the equipment in a suitable place, as was done by Louviere in this instance, and besides, we are at a loss to understand how Louviere's violation of this rule, conceding it to be one that never was to be departed from, could affect the rights of the plaintiff in this case. That is the point which it seems to us, counsel for the defendant has lost sight of throughout the whole case. Most of the argument made by them might well apply to Louviere, the plaintiff in the case. But why hold Landry in any way responsible when he was only following his foreman's instructions, is a matter which we cannot understand.

After having stored the equipment in a yard along the highway and taken the tools out, Louviere and his crew started out on foot to a place referred to as Sonier's store, where he says he had made arrangements to have a car meet them to take them back to the barn. Sonier's store was about one mile distant from the junction in the two roads where they had stored the machinery. They had not walked far when a Ford coupé came along, going in the same direction as they were. Louviere hailed the car and asked for a ride for all of them up to Sonier's store. He happened to know the men in the car, a Mr. Deputy and a Mr. Prejean. As they were then five all together, it was impossible for them all to ride in this two-seated car. Louviere then directed the manner in which his men would ride, telling McMillan to sit inside with the two occupants and for Landry to "hang-on" on the left side while he "hung-on" on the right. They drove as far as Sonier's store and on reaching there, Louviere discovered that the party who was to meet them by appointment had failed to show up. He accordingly asked the owner of the car they were in if he would take them into Welsh, and this he readily agreed to. In rounding a curve on the highway at a point about four miles from Welsh, Landry lost his grip on the car and fell forward on the gravel road. He must have suffered a severe blow by the fall for he sustained bad cuts on the forehead and nose, had two teeth either broken or loosened in the

right jaw, and his head forced forward and downward so that'his chin rested on his chest. He was rendered unconscious and did not come to until long afterwards when he had been taken to Dr. Martin's office in Welsh. He was treated by Dr. Martin and after three weeks went back to work. He suffered so much while working that at the end of ten days he was obliged to give up and has been unable to do anything since.

Under the facts appearing, defendant presents the question, Was Landry injured while returning from work in a means of conveyance that may be said to have been furnished by the employer?

We had occasion very recently to decide a case in which this same question was involved and therein referred to the extension of the rule with regard to an employee having been injured on his return from work while on a conveyance furnished by the employer, to those cases where the contract to furnish transportation may be implied as well as express. Walker v. Mills Engineering Construction Co. et al. (La. App.) 152 So. 83. We cited the same authority to that effect as is cited in this case by the district judge in his written reasons for judgment. In this case, however, the facts favor the plaintiff more than they did in the cited cases as the accident happened about 3 o'clock in the afternoon, an hour or more before the employee's day's work had ended. In a sense it may be said that the accident did not happen when he was being transported home from work because there is considerable testimony to the effect that plaintiff might have had some work to do around the barn before "knocking-off" time. We think that it would be unreasonable to restrict the employee in this case to the rigid rule of transportation contended for by counsel for defendant, for, as we have already stated, an emergency might easily arise which would necessarily cause a deviation from that rule. We believe that in this case, the foreman Louviere exercised good judgment in following the plan he did, of leaving the equipment, properly stored in a yard along the highway, from where it would be put to use in starting the next day's work. It was a plan calculated in his opinion no doubt, to best serve the interest of his employer. But, conceding that it was not, again the thought comes to us, how can the rights of the plaintiff herein who was only a laborer working

under him be affected? It was a matter of no concern to him if his foreman did not adhere to the strict rules or instructions in seeing that he get back from work. He was not expected to walk back five or six miles, on a bitterly cold day as the day he was injured on was shown to have been. He depended on his foreman, as he had the right to, to see that he was transported to the barn. The manner selected by the foreman was one of those he says he thought he had the right to select. It was a reasonable plan, and in the accident which occurred while so being transported, Landry may very well be said to have been injured in the scope and course of his employment within the terms and meaning of the compensation statute (Act No. 20 of 1914, as amended).

The additional defenses which grew out of the testimony are to the effect that Landry did not avail himself of the safe and adequate means afforded him for transportation, but, on the contrary, chose a most dangerous one, and that in riding on the side of the Ford car he violated specific instructions which had been given to all employees of the defendant. The answer in the first instance is that he did not do any of the choosing himself, and in the second, that he not only had the example of his foreman who was doing the same thing, but was carrying out the latter's orders.

The remaining issue as regards the nature and extent of the plaintiff's injuries and the duration of his disability present no difficulty, under the evidence as we view it. It leaves no doubt in our minds that this man, before the date of this accident, was apparently in good health and able to do a hard day's work and that since then, he has been left an almost total invalid, seemingly affected in both mind and body and unable to do work of any reasonable character. There is some question in the minds of some of the doctors who testified as to whether his case may not be one of hysteria, but we deem it unnecessary to enter into a discussion of this testimony as we feel satisfied that plaintiff has shown by a preponderance of proof that his present condition is one of physical disability attributable to the injuries he received on the day of the accident.

The judge of the lower court has properly held the plaintiff entitled to compensation as for total disability and the judgment as rendered by him is hereby affirmed.