This is a compensation suit in which the only question at issue is whether or not the accidental injury sustained by the plaintiff occurred in the course and within the scope of his employment. There is some question also as to the nature and extent of the injury as it relates to plaintiff's condition, and whether it is one which produced total and permanent disability.
Plaintiff was employed by the Chickasaw Saw Mill, Inc., engaged at the time in manufacturing lumber at a small portable saw-mill which it operated near Clinton, Louisiana. The accident and resulting injury which he sustained occurred while he was riding home from work on a wagon belonging to the defendant and which was being driven by his brother who was also employed by the same company. The latter had charge of the wagon and horses and kept them at the place where he lived and which is referred to as the field house.
The saw-mill was located in the woods at a distance of approximately one and one-half miles from the highway. The men who were engaged at the mill and who lived at greater distances than did the plaintiff, were taken to work on a truck by one of the operators of the mill. As the road in the woods leading from the highway to the mill site was very rough, the truck was not driven over it and, as we understand, the men were put off on the highway and either walked to and from the mill unless they could get there in some other way. With regard to these employees the contract of employment included their transportation to and from work and therefore they would come within the rule that any one injured while being so transported would be entitled to recover compensation on the theory that the accident occurred in the course of their employment.
Plaintiff's brother who had charge of the wagon and horses was Howard Thomas and they and a sister, Hannah Thomas, all lived together. The wagon was a form of truck used for carrying logs but with the use of two boards placed cross-wise, it was also used to carry feed for the stock kept at the place where Howard Thomas lived. There seems to be no dispute that in the afternoon, after working hours, some of the employees at the mill also rode on the wagon as fat as the field house. As plaintiff lived there he took advantage of the opportunity almost every day of riding home. There were others of the employees who apparently did the same thing and on the day he was injured there were four men on the wagon besides him.
[1] There is no dispute as to how the accident happened. It is shown that the wagon on that day was loaded with twenty sacks of feed and that on striking a rough spot on the road plaintiff was thrown off and was run over by the wheels, causing the injury to his back which he complains of. With regard to him and to these other men who were riding on the wagon at the time, their contract of employment did not contemplate transportation to and from work and if the rule of law were that it is only where there is an express agreement to that effect that the injured employee can recover compensation, then plaintiff would not be entitled to a judgment. However, the rule with regard to transportation has one well-known modification as there are several decisions which hold that a contract with necessary transportation may be implied from the acts of the employer who tacitly *Page 703 
permits his employees to ride to and from work on a conveyance used for some purpose in connection with the business in which he is engaged. The vital question in this case therefore is whether such an implied contract may be said to have existed by reason of the acts of the employer in permitting this plaintiff and other employees to ride home from work on the wagon.
[2] If plaintiff's testimony were to be given its full effect it would seem that there was such a tacit permission as he states that it was a regular habit for him and others of these employees to ride home on that wagon. His testimony on this point is corroborated by that of a fellow employee named Joe Turner. But we don't have to rely on the testimony of these two men alone, for that of Mr. Jewell Merrit, one of the operators of the saw-mill, also leaves us with the definite impression that these employees rode home from work on the wagon with the full knowledge and consent of their bosses and in fact, on the day that the plaintiff was injured, Mr. Merrit himself told some of them to get on the wagon to hold down the feed as there were some mighty bad roads to go over. He was following the wagon by about thirty yards and saw the plaintiff fall off and helped to pick him up and take him to the doctor's clinic in Clinton. Taking this evidence in connection with the testimony of the plaintiff to the effect that every day, after knocking off work, he waited for the wagon and rode home on it with his brother, and in the absence of any testimony to the effect that he ever was told not to do so, it is evident that the employer in this case condoned the practice and by tacitly permitting it, the contract of hiring, with transportation included, may be said to have existed.
This court once applied the same rule in a case against a contractor who was building a State highway in southwest Louisiana and who permitted the employees to ride to and from work on a dump truck used in connection with the job he was engaged on. It is true that in that case the injured employee lived at a far greater distance from the site of the work than did the plaintiff in this case but we don't think that the determining factor should be one of distance if the facts otherwise reveal that the practice of riding home on the conveyance is tacitly permitted by the employer and indulged in by the employees without objection. The case referred to is that of Walker v. Mills Engineering Construction Co., La. App., 152 So. 83. In support of the ruling there are cited decisions of the other two Courts of Appeal of this State, one being the case of Thompson v. Bradford Motor Freight Lines, La. App., 148 So. 79 and the other, Mahaffey v. Mill Creek Lumber Co., La. App., 147 So. 834. In addition we presently cite the case of May v. Louisiana Central Lumber Co., 6 La. App. 748, which we believe to be particularly pertinent in view of the factual situation therein presented and on which the same ruling was applied.
[3] The only other point in the case is with regard to the extent of the injury sustained by the plaintiff. We have no hesitancy in saying that under the evidence found in the record, his is a case of total disability. Something is said in argument about his condition previous to the accident. It appears that plaintiff has some congenital deformity and is a hunchback. It is suggested that he should never have been employed to work around, a saw-mill. However, that is a matter with which we are not concerned as the fact is that he was employed and was performing services for which he had been hired. He seems to have had a serious back injury which consisted of a fracture of the pelvis and according to the testimony of the doctors it is difficult to say what the results from the injury might be in the future.
We have concluded that plaintiff is entitled to recover compensation as prayed for by him and therefore the judgment of the lower court will have to be reversed.
For the reasons stated it is therefore ordered that the judgment appealed from be and the same is hereby reversed, set aside and avoided, and it is further ordered that there be judgment in favor of the plaintiff Robert Thomas and against the defendant, Chickasaw Saw Mill, Inc., awarding the said plaintiff compensation at the rate of $15.60 per week, payable over a period not to exceed 400 weeks, with legal interest on each payment from the date of maturity, and all cost of this proceeding. *Page 704