BANKS v. ASSOCIATED INDEMNITY CORPORATION et al.

TRAVELERS INS. CO. v. BANKS et al.

No. 11822.

Circuit Court of Appeals, Fifth Circuit.
April 30, 1947.

Rehearing Denied May 19, 1947.

306

Harry V. Booth, of Shreveport, La., for Margaret Janice Banks.

Hollingsworth B. Barret, of Shreveport, La., for Travelers Ins. Co.

Elias Goldstein, of Shreveport, La., for Associated Indemnity Corporation.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

William O. Banks died as a result of injuries sustained in a collision on December 28, 1944, near Crew Lake, Louisiana, between a sedan owned by G. H. Neighbors, of Shreveport, Louisiana, and a truck owned by V. Frank Lynn Grocery Company, Inc. The Neighbors car was covered by a policy of general liability automobile insurance issued by the Associated Indemnity Corporation of San Francisco, California, in a sum not to exceed $25,000, and the grocery company truck was covered by a similar policy issued by The Travelers Insurance Company of Hartford, Connecticut, in a sum not to exceed $10,000. Margaret Janice Banks, wife of the decedent, individually and in behalf of her minor child, brought this suit for damages against the Associated Indemnity Corporation and against The Travelers Insurance Company under Act 55 of the Legislature of Louisiana for the year 1930, which permits an injured person to sue directly an insurer without joining the insured. The plaintiff alleged that the accident was due solely to the concurrent negligence of Neighbors' employee driving his automobile and of the grocery company driver in charge of its truck, both of whom were acting in line of duty. The prayer was for judgment against both defendants in solido [1] for herself and for her minor child in the sum of $29,360.

Associated in its answer alleged that the negligence of the truck driver caused the collision; that at the time of the collision Banks was in the employ of Neighbors and was in the course of his employment; and that, since Associated had issued to Neighbors a workmen's compensation policy, in accordance with Louisiana law, it was not liable under the general liability policy but was liable under the compensation policy. Travelers in its answer, after asserting the accident was caused by the negligence of Neighbors' employee, further alleged that on the day of the accident Banks and the other members of a derrick building crew were returning to their homes in Shreveport on account of a suspension of work because of bad weather, and that the trip in question was for their convenience and pleasure. It also set up certain cross-claims and third party complaints which were abandoned on this appeal.

At the close of the evidence, Associated filed a motion for a directed verdict. This was overruled, and the jury returned a verdict against both defendants for $25,000; and, as between the defendants, provided that $10,000 of the said amount should be paid by Travelers and $15,000 should be paid by Associated.[2] Associated then filed a motion for a judgment notwithstanding

---

[1] In solido defined: Louisiana Civil Code, art. 2091: "There is an obligation in solido, on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor."

Art. 2104: "If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each."

[2] The verdict read: "We, the jury, find for the plaintiffs fixing the amount of damages at $25,000.00. We further find that the plaintiffs may execute against either of the defendants for the satisfaction of such judgment, not to exceed in the case of Travelers Insurance Company, $10,000.00, and not to exceed as against Associated Indemnity the sum of $25,000, or the full amount of the verdict.

"We further find that as between the insurance companies, the Travelers Insurance Company shall pay the sum of $10,000.00, and the Associated Indemnity Company shall pay $15,000.00."

the verdict, based upon its claim that, since Banks was killed in the course of his employment, as insurer of Neighbors under the workmen's compensation law of Louisiana, its liability was fixed by that law. A further basis was that its general liability automobile policy issued to Neighbors provided that said policy did not apply if at the time of an accident those injured were subject to the provisions of the Louisiana compensation law. The motion for judgment notwithstanding the verdict was sustained, and the verdict against Associated in the sum of $15,000 was set aside. From the judgment thereupon entered, Mrs. Banks, for herself and her minor child, and Travelers prosecuted this appeal.

■ The issues raised on the appeal are: (1) Was Banks injured in the course of his employment so as to bring him under the compensation law of Louisiana? (2) if not, was the ratio of liability fixed in the verdict against the two insurance companies, that is, for $10,000 to Travelers and $15,000 to Associated, correct? Neither Travelers nor Associated on this appeal questions the jury's finding that the joint negligence of the insureds' employees caused the collision. The question of negligence, therefore, is not before us.[3]

Here, Mrs. Banks and Travelers contend that the conflicting evidence as to whether Banks was injured in the course of his employment presented a question which was properly submitted to the jury; Associated contends that the evidence shows conclusively that Banks was injured in the course of his employment. Travelers further contends that, with the verdict restored, an in solido obligation in Louisiana binds both obligors, as between themselves, to divide the in solido debt; and, as the limit of its obligation under its policy was $10,000, its in solido obligation was that sum, with respect to which it and Associated are solidarily bound, the amount due Mrs. Banks beyond that sum being the sole obligation of Associated under its policy for $25,000. From this Travelers argues that, as between it and Associated on the $10,000 solidary

obligation, each was bound for one-half, or $5,000, and that the verdict was incorrect in assessing $10,000 to it and $15,000 to Associated; and that the correct assessment was $5,000 to it and $20,000 to Associated. In the alternative, Travelers urges that, since the total insurance of the two companies was $35,000, the $25,000 verdict in favor of Mrs. Banks should have been assessed to it in the proportion of ten thirty-fifths (10/35) of $25,000 and to Associated in the proportion of twenty-five thirty-fifths (25/35) of $25,000.

Banks and several other workmen, all residents of Shreveport, Louisiana, were employed by Neighbors as rig-builders for the construction of an oil well derrick in De Soto County, Mississippi. The agreement provided that they should be paid at the rate of so-much per day while working on the job and allowed a half-day's pay for the trip over and a half-day's pay for the trip back when the work was completed, and that Neighbors should furnish transportation each way. The journey over was made on December 15. Weather conditions became so bad by the 28th that work was suspended on that date at 2:30 p. m. As members of the crew, including Banks, had been away from home during the Christmas holidays, they expressed a desire to go home and to remain there until the weather cleared and work could be resumed. All the members of the crew who testified stated that they approached Neighbors' foreman relative to the trip and he contacted Neighbors; that Neighbors instructed his foreman to drive them to Shreveport in Neighbors' car in order that the crew might return to their homes until working conditions were better, and also instructed him to stop at Neighbors' office in Bossier City, across the Red River from Shreveport, in order that the men might receive their pay. On the trip to Shreveport the collision resulting in Banks' death occurred.

The pertinent question is whether on this trip the employees were serving their own interests or whether, because Neighbors agreed to return them home in his car

---

[3] It is the law in Louisiana that, where two persons are negligent and their combined negligence contributes to and brings about an accident, they are what are known as joint tort feasors or joint wrong doers. Such tort feasors or wrongdoers are liable in solido.

driven by his foreman, with the understanding that they would return when weather permitted work to be resumed, they remained in the scope of his employment until delivered to their homes. The opinion of the trial judge on the motion for judgment non obstante veredicto indicates that he thought the return trip home was made in the mutual interest of employer and employees; that the bad weather created a situation harmful to both; that the employees were paying expenses while receiving no wages; that the employer was required to pay for a half-day's time if they worked any fraction of a day and for a full day's time if they worked four hours or more; and that, therefore, both parties were concerned with the weather conditions. The court said:

"There is some difference in the testimony as to who first suggested the trip back to Caddo Parish pending the clearing of the weather and likewise some difference as to why it was made, that is, as to whether the employees wanted to go home because they had been away during the Christmas holidays and were paying substantial amounts for expenses while receiving no wages; or whether it was for the interest of the employer, who had attempted work on the derrick more than once but had quit because of the weather, yet had to pay the day's wages of his employees if any part thereof was worked.

\* \* \* \* \* \*

" \* \* \* it is not disputed that attempts had been made to carry out the undertaking between employer and employees, as originally contemplated, but the intervention of weather in which work could not be performed made it impossible, to the point that it was mutually agreed it should be discontinued until the weather cleared and further that the employer would, in the meantime, return the employees to their homes until conditions improved so that the contract could be completed. \* \* \*"

 The presence of mutuality of interest is material only as a factor to be weighed along with the other evidence in determining whether the contract was amended. The amendment proved, the reason or motive which prompted the parties to enter into it would become wholly immaterial.[4] Neighbors, as a witness, denied that he had any interest in the return trip. He stated that it made no difference to him whether they remained at the job, went home, or went elsewhere; at another time he stated that "until they [the crew members] got home and got their checks" they were on the pay roll. Moreover, there was evidence that it was in his interest to complete the derrick speedily. The men, if on the job, would be available for work at any time; at home, 200 miles away, they would not be.

Typical of the testimony by the crew members is the following: Whitt, a member of the building crew, with respect to the trip home, testified: "A. The weather was so bad, raining and freezing, and we couldn't do anything, so we all thought we would come back home a day or two until the weather got better.

"Q. Was that done under Mr. Neighbors' instructions? A. No, sir, he didn't tell us to come. We came on our own hook. We hadn't got to come home Christmas, and we all wanted to come in, so we just thought we would come in."

Simmons, another member of the crew, said: "It was the holidays and we wanted to come home. The crew went to Reneau [Neighbors' foreman] and he talked to Neighbors."

Salisbury, also a member of the crew, testified that the trip originated among the members of the crew: "We were talking about it among ourselves that morning, that we wanted to come in." He described the return trip as "what we called 'deadheading.'" Reneau, Neighbors' foreman, testified that he approached Neighbors to obtain permission to make the trip and that Neighbors told him, "You can either go home, or stay here. It don't make no difference to me." Reneau then said, "So

---

4 Under the civil law, contracts legally entered into have the force and effect of law between the parties thereto; they may be modified, abrogated, or revoked by the mutual consent of the parties. La.C.C. arts. 1901, 1945, and 2130. Scudder v. Howe, 44 La.Ann. 1103, 11 So. 824; Noto v. Blasco, La.App., 198 So. 429, 431.

they all wanted to come in [go home], so I said, 'We will go.'" Another workman testified: "When you go off on a job like this one, it is always understood you will finish the job before returning home." He further stated that if any trip was made prior to the completion of the work, it was made on the employee's time. It was customary, he said, to stay on the rig-building job until it was finished, regardless of the weather.

There was testimony that the crew members received a half-day's pay for the return trip. The schedule of payments filed in evidence showed a half-day paid for that trip under date of December 28. Other evidence showed this to be in error: this schedule credited the men with a half-day's work on the 28th and a half-day's return trip, but it should have shown one full day's work, as the men worked from 8:00 a. m. until 2:30 p. m. on that date, in excess of four hours, and four hours' work entitled them to receive a day's pay. From the evidence, the jury could conclude that the fatal trip, as far as Neighbors was concerned, was an accommodation to his men and that the trip was made at their instigation and for their benefit and pleasure. For instance, there was evidence: (1) That the accident happened on an interim trip home before the work was completed; this interim trip was not contemplated in the original contract. (2) That the interim trip was initiated by the employees, not by the employer. (3) That by returning home the workmen effected a saving in board and lodging while work was suspended. (4) That the trip lacked any work-connection or employment purpose. And (5) that, while their wages were paid on arrival home, the payment of wages was not a reason for sending them home. On the other hand, there was evidence from which the jury could have concluded that the trip home was in the course of the employment: (1) It was made because of bad weather conditions which were not, as far as the evidence shows, in the contemplation of the parties at the time the original contract was entered into. (2) Neighbors did not con-

sent thereto, nor agree to send the men home at his expense, in his car, driven by his foreman, as a mere accommodation to the men; it was financially to his interest to await better weather conditions so that the men could put in regular hours. (3) Labor was scarce, and he desired to keep his men satisfied; he sent them home rather than run the risk of losing them. (4) The trip home enabled him to pay off the men, get them off his pay roll, something he had not been able to do prior to that time. (5) He later carried them back to the job in his car at his expense. It was for the jury to weigh the evidence and to draw the inferences therefrom, and to conclude whether the trip was made in the interest of and for the accommodation of the workmen or was an incident of their contract of employment. Where reasonable men may differ in the inferences to be drawn from the evidence, it is generally held that a jury question is presented. We think, therefore, that the question whether Banks was within the course of his employment when injured was properly submitted to the jury, and that the trial court committed no error in overruling the motion filed by Associated for a directed verdict at the close of the evidence.[5] For the same reasons, we think the trial court erred in sustaining the motion for judgment notwithstanding the verdict.

But, says Associated: "In every case where, as here, the employee was riding in a conveyance of the employer which was being driven by the foreman or superintendent, the Workmen's Compensation Act has been held to apply, even in those cases where the trip was taken without the consent or knowledge of the employer himself." If this statement were supported by any jurisprudence, it would justify the action of the court below in sustaining the motion for judgment non obstante veredicto; but no case to support it has been cited, and we have found none. In an annotation in 145 A.L.R., at page 1033, citing numerous Louisiana cases, the annotator says: "The general rule is * * * that where the transportation is furnished by an employer as an

---

[5] The trial court should overrule a motion for a directed verdict unless, viewing evidence in light most favorable to plaintiff, there would be no substantial evidence to support a verdict if returned for the plaintiff. Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Goodall Co. v. Sartin, 6 Cir., 141 F.2d 427; Dawson v. McWilliams, 5 Cir., 146 F.2d 38.

incident of or under the contract of employment an injury to or death of an employee which results while he is riding to or from work in a conveyance so furnished by the employer arises out of and in the course of the employment, within the meaning of the workmen's compensation acts. * * *"

In Baker v. Colbert,[6] 17 La.App. 518, 136 So. 210, 215, the Louisiana Court of Appeal, Second Circuit, quotes approvingly from the Donovan case, [In re Donovan], 217 Mass. 76, 104 N.E. 431, Ann.Cas.1915C, 778, as follows: " * * * that Donovan's transportation was 'incidental to his employment' fairly means, in the connection in which it was used, that it was one of the incidents of his employment, that it was an accessory, collateral or subsidiary part of his contract of employment, something added to the principal part of that contract as a minor, but none the less a real, feature or detail of the contract. *Whatever has been uniformly done* in the execution of such a contract by both of the parties to it well may be regarded as having been adopted by them as one of its terms. * * *" [Emphasis added.]

 As a general rule, injuries to employees on public highways going to and from their employment do not arise out of or in the course of their employment. Boutte v. R. L. Roland & Son, 15 La.App. 530, 132 So. 398; Thompson v. Glen Hill Gravel Co., 19 La.App. 854, 141 So. 797. Injuries received while going to or from work under an express or implied contract to furnish transportation are compensable and are an exception to the general rule. The transportation, however, must be a concomitant part of the contract of employment itself. Bacle v. Cochran & Franklin Co., Inc., La. App., 196 So. 401; Maddry v. Moore Bros. Lbr. Co. et al., La.App., 197 So. 653; Fowler v. Louisiana Highway Commission, La. App., 160 So. 813.

In Evans v. Central Surety & Insurance Corporation, La.App., 10 So.2d 406, 408, the court said: "In order for an employee (or his dependents) to recover compensation it must be shown that the injury occurred in the course of his employment—that is to say, within the hours of his work or the period of his employment; and, also, the accident must arise out of the employment or be incidental thereto, that is to say, the employee at the time must be engaged about his employer's business and in furtherance thereof and not merely pursuing his own pleasure, coupled with the further consideration that his employment reasonably required him to be at the place where he was injured. * * *"

In Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19, 21, the Supreme Court of Louisiana said: "In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business *and not merely pursuing his own business or pleasure;* and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?" [Emphasis added.]

If in the present case it had been shown that Neighbors was in the habit of returning the members of his derrick building crew to their homes, at his expense, when weather conditions were bad, then such habit would be an implied term in the original contract. See Thomas v. Chickasaw Saw Mill, Inc., La.App., 23 So.2d 701.

The Louisiana Court of Appeal in Baker v. Colbert, supra, cited with approval Erickson v. St. Paul City Railway Co., 141 Minn. 166, 169 N.W. 532. Referring to that case, the Louisiana court said:

"In this case the defendant had a crew of men engaged in maintaining, altering, and repairing its power lines in the city of St. Paul. The men lived in various parts of the city and came to work and returned to their homes in any manner that they chose. The defendant did not convey them to their work, nor return them to their homes. The plaintiff in the case, on one occasion after the day's work was over, got on the defendant's truck to ride it in the direction of his home because it happened to be going that way. A collision occurred, and he was injured. *The court very correctly held that*

6 The trial court, in citing this case to support its conclusion in sustaining the motion for judgment non obstante veredicto, refers to it as a well considered case.

the transportation was purely a matter of accommodation, and that the injury was not received in the course of his employment." [Emphasis added.]

"Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case." Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 154, 68 L.Ed. 366, 30 A.L.R. 532.

The court below, as authority for sustaining the motion for judgment non obstante veredicto, cited Landry v. Louisiana Highway Commission, La.App., 153 So. 74; Walker v. Mills Engineering Const. Co., La.App., 152 So. 83; Baker v. Colbert, 17 La.App. 518, 136 So. 210; Osborne v. McWilliams Dredging Co., La.App., 176 So. 410, Id., 189 La. 670, 180 So. 481; Rogers v. Mengel Co., 189 La. 723, 180 So. 499. We think these cases are not in point. The factual situation in each of these cases differentiates it from the case at bar.

In Landry v. Louisiana Highway Commission, the plaintiff was employed as a grader on the highway under arrangements by which he was transported several miles going to and from his work. When the machinery used broke down, plaintiff's foreman arranged to do certain work on a connecting road the next day. The machinery was left on the job in order that it would be available the next morning. After the men started walking from their work, the foreman induced the driver of a passing car to permit his men to ride to the place where they were going. On the journey the plaintiff was injured. The contract provided for the transportation of the plaintiff to and from his work. The court at the close of its opinion said [153 So. 76]: "* * * It was a matter of no concern to him [plaintiff] if his foreman did not adhere to the strict rules or instructions in seeing that he get back from work. He was not expected to walk back five or six miles, on a bitterly cold day as the day he was injured on was shown to have been. He depended on his foreman, as he had the right to, to see that he was transported to the barn. The manner selected by the foreman was one of those he says he thought he had the right to

select. It was a reasonable plan, and in the accident which occurred while so being transported [plaintiff] may very well be said to have been injured in the scope and course of his employment * * *."

In Walker v. Mills Engineering Const. Co., the defendant was engaged in highway work in the Parish of Beauregard. The plaintiff was employed by the defendant doing work around and back of the concrete mixer. He lived in De Ridder, Louisiana, and rode to work every day on one of the dump trucks used by a subcontractor of the defendant in hauling material to the mixer. In the evening he invariably returned home on one of those trucks. On the evening of July 18, 1932, when ready to leave work and return home, in attempting to board one of the trucks moving slowly, his grip slipped and he was seriously injured. The court held that the evidence showed that his employer permitted the plaintiff to ride to and from work in the dump truck and warranted a recovery under the compensation law from the contractor who furnished transportation to such of his employees as required it.

In Baker v. Colbert, supra, the court said: "Charlie Baker [an employee of defendant], lost his life while riding from his work in a conveyance provided by the defendant through his agent and foreman, * * * after the real beginning of his employment, in compliance with the implied and express terms of his contract of employment. The conveyance was one which the deceased was both permitted and required to use by virtue of the contract. For three weeks the defendant had recognized the necessity as well as the obligation of transporting his men to and from their work every day. The preponderance of the testimony conclusively proves that it was not only an implied, but an express, contract to this effect. Since the defendant was thus under obligation to transport his men, including the deceased, while everything was normal, it was also his duty to meet any emergency that might arise and take the necessary steps therefor. He appears to have recognized this obligation, for with his knowledge and consent his foreman, * * * made the necessary arrangements with the ferryman to convey the men over the swollen Bayou Darrow.

Defendant cannot avoid his liability by saying that all this transportation was a matter of accommodation on his part. *It was not. If the men had had other definite arrangements of transportation and if, as a matter of convenience, defendant had permitted the deceased occasionally to ride with him or on some of his trucks, then it might be said with some degree of plausibility that it was a matter of accommodation that he was riding defendant's truck and the ferry provided by the defendant. But such is not the case. It was the unvarying rule and not an exception for the deceased to go to and from his work in the conveyance provided by the defendant for that purpose."* [Emphasis added.]

In Osborne v. McWilliams Dredging Co., supra, when defendant's employees were off duty, the defendant furnished motorboat transportation across the stretch of water from the dredge boat upon which they worked, were lodged and were fed, to the shore at stated intervals. It permitted the men to go to shore when they were not at work and to return to their homes as they saw fit. Leslie Osborne, plaintiff's husband, an employee, while off duty obtained transportation from the dredge boat to the shore in a motorboat owned by another employee. At that time the motorboat of the defendant was not in operation. In a collision with another boat, Osborne was fatally injured, and the court held the complaint stated a cause of action. The opinion does not make clear upon what theory the case was decided. It may well fall within two exceptions to the general rule: (1) injuries sustained by an employee while entering or leaving the premises of his employer are compensable;[7] and (2) the type of injuries caused by external hazards to which the public is not subjected are compensable.[8] The expanse of water from the barge to the shore was the entrance to and the exit from the work premises, and was an external hazard to which the employee was exposed by virtue of his employment. The court found that the trips by motorboat when the men were off duty were within contemplation of the contract and that the use made of the motorboat by the employee

on this occasion was not unreasonable or out of the scope of the plan generally used; hence, that the petition stated facts that would bring the plaintiff's husband within the scope of his employment. The court said:

"Exceptors concede that, had the accident occurred while the employee was in the vessel furnished by the employer, there would be liability in compensation, and they also concede that, if the employer had furnished no transportation, there could be liability for accident sustained in proximity to the dredge on such trips as may have been required by the employer, or as may have been within the contemplation of the contract of employment. *Exceptors recognize the fact that at regular intervals, or in emergencies, employees must return to their homes, and it thus must be admitted that trips made at these regular intervals or in emergencies are within the contemplation of such contracts,* but they maintain that the accident here did not occur on such a trip, but, on the contrary, on one which was not contemplated by the contract of employment, but which was during a period in which, as plaintiff herself alleges, the employee was 'expected to stay on the said dredge.'" [Emphasis added.] [176 So. 412.]

"Under plaintiff's allegations as to the contract, which must be accepted as true in passing on the exception of no right or cause of action, Leslie Osborne had the full permission of his employer to leave the dredge to visit his home, and full permission to go in the motorboat owned and driven by Clyde Barrow, a fellow employee. This was the method of transportation used by the employer himself. "Besides, plaintiff has alleged 'that the company permitted its employees to go to their homes on shore at any time after their shift of service was completed, and that shortly after his shift was over, plaintiff's husband decided to go to shore by means of a boat, so that he might then arrange to go to his home.'" [189 La. 670, 180 So. 483.]

In the present case, the interim trip was not within the contemplation of the contract of employment, and no emergency required Banks to make the trip home. The liberal

---

[7] 71 C.J., "Workmen's Compensation Acts," p. 729, Sec. 449.

[8] 71 C.J., "Workmen's Compensation Acts," pp. 652–653, Secs. 399, 400.

interpretation of the workmen's compensation law as set forth in the Osborne case may not be further stretched to cover the present case or to justify a judgment contrary to and notwithstanding the jury verdict.

In Rogers v. Mengel Co., supra, the plaintiff received an injury on the premises of his employer while near a fire which had been built by co-workers to warm themselves after being told by their employer that nothing could be done that day on account of the weather conditions. The court said [189 La. 723, 180 So. 499.]:

"The contention of defendants that their responsibility had ended as employers, in view of the fact that the men had been told that the weather conditions were unfavorable for working, is supported neither by the law nor by the facts of the case.

"Plaintiff's employment did not end, because he was told that the weather conditions were unfavorable for working on December 30, 1935, the day of the accident. *Plaintiff was not hired and paid by the day, but by the week, at a wage of* $15. He had not been discharged by his employers prior to the accident. The accident occurred on the premises of the defendants. *Plaintiff had not voluntarily appeared there, but was at the scene of the accident because he had been ordered by the defendants, his employers, to be there ready for work.* [Emphasis added.]

\*　　\*　　\*　　\*　　\*　　\*

"And, when one finds himself at the scene of accident not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident 'arise out of' the necessity which brought him there, and hence 'arise out of' his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred."

The obvious differences between the Rogers case and this case are: (1) Banks was not hired by the week, but, to the contrary, he was hired on a daily basis. (2)

The accident did not occur at the place of his employment, and whether it occurred during the time of his employment and in the course thereof was a question for the jury.

We find no merit in Travelers' contention that the jury erred in assessing as between it and Associated $10,000 of the $25,000 awarded Mrs. Banks. Under Act 55 of the Legislature of Louisiana for the year 1930, the insurer, when sued in lieu of the insured, stands in the shoes of the insured to the extent or limit of its policy. Travelers, therefore, stood in the shoes of its insured, V. Frank Lynn Grocery Co., Inc., the owner of the truck. Had Neighbors, the owner of the automobile, and the grocery company, the owner of the truck, been parties defendant, instead of their insurers, the $25,000 in solido judgment in favor of Mrs. Banks would have, as between them, been divided equally, $12,500 to each. Under such circumstances, Travelers Insurance Company would have been liable to its insured for $10,000, the limit of its policy. When it stands a party defendant in the place and stead of its insured, as here, the assessment against it in the sum of $10,000, the limit of its policy, is proper.

In the court below Associated joined to its motion for judgment non obstante veredicto an alternate motion for a new trial in these words: "In event that this motion [for judgment non obstante veredicto] should not be granted, then mover prays that a new trial of this case be ordered." Having granted the motion for judgment non obstante veredicto, no action was taken by the court below on the alternate motion. It stands undisposed of. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

For the reasons assigned the judgment appealed from is set aside with directions to the court below to pass on Associated's motion for a new trial. In the event the motion is overruled, the court is directed to enter a judgment based upon the verdict of the jury.

Reversed and remanded with directions.