This is a compensation suit in which plaintiff seeks to recover a maximum of four hundred weeks compensation as the result of an injury allegedly sustained on July 30, 1948, when he was injured on a log truck then being used by him as a means of conveyance from defendant's woods job to plaintiff's home in Monroe, Louisiana, some eleven miles distant.
The answer admitted that plaintiff was employed as a pole peeler, but denied that defendant or any of his employees had transported plaintiff to and from the job; denied that plaintiff was riding on defendant's truck at the time of his injury, and set up the further defense that plaintiff had, at 10:30 a.m. on the morning of his alleged injury, notified defendant's foreman that he was quitting; that at noon of that day, plaintiff had notified defendant himself that he was working no more.
As an additional defense, defendant pleaded that plaintiff had been warned repeatedly that it was a dangerous practice to ride on the log loads as the trucks were being brought over the rough woodland.
The District Court found that plaintiff had worked for the defendant on Tuesday, Thursday and until 10:30 a.m. on Friday, the day of the accident; that he had remained in the vicinity until the end of the day for the purpose of securing transportation back to Monroe. The written opinion covered the facts of the injury and the Court's finding in the following tersely written paragraph: "As Mr. King's loaded truck was coming out of the woods and before reaching the highway, the plaintiff placed himself on top of the logs in a dangerous position and received his injuries. The evidence preponderates to the effect plaintiff was repeatedly warned not to get on the truck before it reached the highway, and that his disregard of this instruction was deliberate. Accordingly, I am of the opinion plaintiff may not recover."
Plaintiff has appealed from the judgment rejecting his demands.
At 6:00 a.m. on the Tuesday preceding the accident on Friday, plaintiff, who had heard that defendant was seeking men to work in his business of producing piling, flagged defendant's foreman, Sam King, at Five Points in the City of Monroe, Louisiana. Sam King readily hired plaintiff, who rode some eleven miles into the country to a tract of land where the cutting, peeling and loading operations of defendant were in progress. He worked all day Tuesday. At the close of the day he rode back to Monroe on one of the trucks which was on the job. He worked again Thursday, making the trip both ways on the log truck used on the job. Friday morning he again met the truck at Five Points; rode out to the job and began his assigned work of peeling piles. After completing the peeling of a forty-six foot pine piling, he started work on a seventy foot tree. It was not disclosed how far along he was at this job when, sometime between 10:00 a.m. and 11:30 a.m., he ceased working, telling the foreman that it was too hot to peel poles.
Shortly before noon defendant himself visited the job and talked with plaintiff, who was resting near the water barrel. The foreman suggested that plaintiff ride into Monroe with defendant, but defendant told plaintiff that it was necessary for him to go up to his farm, where he had heard that someone's hogs were getting into his field, and plaintiff did not press further the matter of riding with him but waited until the close of the day when the loaded trucks, with the assistance of a tractor, were in process of being driven and pulled from the woodland onto the gravel road where each would start, under its own power, to the City of Monroe for the purpose of delivering the piling.
One of the trucks was driven and owned by Sam King, who was defendant's foreman, with full authority to hire and fire and to generally conduct the job of cutting, peeling and hauling piling from the woods job to a point on the railway in Monroe. Sam King was paid by the day for his work in the woods and paid an additional sum, based on the number of feet of piling hauled, for the use of his truck. There were one or more other trucks on the job which were owned by defendant and driven *Page 484 
out each day by employees who worked under Sam King in one of the operations incident to the production of piling, namely, the cutting of the trees, the peeling of the trunks, or the loading of the trucks; getting the loaded vehicles on the gravel highway or the delivering of the poles to the railway point in Monroe.
Plaintiff — though he had been warned not to get on the log load until the truck was safely on the gravel road — seated himself on the top of the logs on Sam King's truck at a point when it was stopped near the highway but not yet on the highway. In the process of getting this truck on the highway, brakes were applied, the log load shifted and plaintiff suffered a severe injury to his right ankle and foot.
We will first consider the holding of the District Court in sustaining defendant's defense that plaintiff's getting on the truck before it reached the highway was in disregard of repeated warnings and therefore constituted a bar to his recovery.
The evidence sustains the finding of fact by the District Judge that plaintiff and the other employees had been warned against getting on the trucks before they reached the highway and that plaintiff's injury resulted from his disregard of these instructions. The only mitigating circumstance is plaintiff's testimony that at the time he climbed on top of the loaded logs, the truck was already partly on the highway and that he thought that Sam King, when he got in the cab, intended to drive the truck onto the highway, and, without stopping, continue on to Monroe. Be this as it may, the fact remains, as found by the District Court, that his getting on the truck was in direct disregard of his foreman's instructions.
This Court had occasion to consider a similar defense in the case of Liner v. Traveler Insurance Company et al., La. App.,41 So.2d 804. One of Liner's duties was to keep gasoline in the tanks of a power plant and other machinery on the levee job operated by defendant near Colfax, Louisiana. As a safety precaution, he was instructed not to pour gasoline into the tank while the engine adjacent to it was running. In spite of this warning, he began to fill the tank while the engine was running. The gasoline caught fire and he was severely burned. After finding as a fact that Liner had directly violated the safety instructions and that his injury came as a direct result of this violation, this Court determined as a matter of law that he was, nevertheless, entitled to recovery under the compensation act.
In the light of this recent Liner case and the authorities there discussed, we conclude that our learned brother of the District Court erred in ruling that plaintiff Guthrie, because he disregarded the instructions by riding on the log load before the truck reached the road, was barred from his recovery against defendant.
We next consider defendant's denial in answer that plaintiff was riding in a truck owned by defendant or that his employees were transporting plaintiff to and from the job.
Sam King, owner of the truck, was an employee of defendant. It was a custom for defendant's foreman Sam King, who drove his own truck, and of one or more drivers of other trucks owned by defendant himself and operated by his employees, to pick up men working on defendant's job and carry them out to the job site. In order to avail themselves of this transportation, the workmen placed themselves at some point which the trucks would pass. Employee Foster habitually caught one of the trucks at the Rose Oil Station in Monroe; employee Kelly at another point. One workman used his own car — when it was running. A colored "swamper" and other employees rode out to this job either on the truck owned by defendant or by his foreman, Sam King. Another employee, Sam Griffin, said he rode the truck to and from work "part of the time."
The Court of Appeal for the First Circuit in the case of Thomas v. Chickasaw Sawmill, Inc., 23 So.2d 701, held that a contract to furnish employees with necessary transportation may be implied from the employer's acts in tacitly permitting an employee to ride to and from work on a truck used in connection with his employment, citing as authority therefor, among *Page 485 
others, the case of Walker v. Mills Engineering Construction Co. et al., La. App., 152 So. 83, 84. The facts of the Walker case as disclosed by the opinion were that defendant was engaged in a road construction job at a point some miles from the town of DeRidder, where plaintiff, who was employed on the job as a concrete mixer, lived. The defendant company subcontracted the hauling of sand and gravel, etc., to a separate concern whose trucks were constantly running from DeRidder out to the point where defendant was pouring concrete on its highway job. Plaintiff and other workmen — without any definite arrangement beforehand — habitually rode these trucks to and from work. Finding that it was an accepted custom of numerous employees to board the dump trucks in going to and from DeRidder, and that frequently one of the defendants was present when the employees boarded the truck, the Court concluded that the action of defendant in failing to remonstrate and in permitting the practice to go on had condoned the action of plaintiff and his fellow employees in using the dump trucks as a means of going to and from work. We quote from that opinion: "The rule that an employee may recover compensation when injured on the way to or from work in a conveyance furnished by the employer within the contemplation of the employment contract has been extended to cover those cases where, if there is no express contract to that effect, one may nevertheless be implied from the acts of the employer in tacitly permitting him to ride to work and back home on a truck or other conveyance which is used for some purpose in connection with the work that is going on. Mahaffey v. Mill Creek Lumber Co., La. App., 147 So. 834; Keyhea v. Woodard-Walker Lumber Co., Inc., La. App., 147 So. 830; Thompson et al. v. Bradford Motor Freight Line et al., La. App., 148 So. 79. Injuries to an employee under such circumstances are held compensable as having been sustained in an accident 'arising out of and in the course of the employment.' It is our conclusion that the plaintiff's case comes under the rule as herein stated, and that he is entitled to recover compensation."
The facts of the case before us are stronger in favor of plaintiff than those set forth in the Walker opinion since the Sam King truck was used not only to haul poles for defendant, but in addition Sam King occupied the position of foreman and employee of defendant, a closer relationship than that of independent contractor, which was the relationship between the owner of the dump trucks and the defendants in the Walker case.
We finally consider the defense of defendant that plaintiff, when he ceased to work at 10:30 or 11:00 o'clock in the morning, was no longer an employee and therefore not in the course and scope of his employment at the time of his injury at 5:00 p.m.
The evidence discloses that the job was more than ten miles out in the country from plaintiff's home in Monroe. The habit and accepted practice of plaintiff and other employees was to ride both to and from work on the trucks used on the job. Plaintiff had gone out that morning with the bona fide intention of working and did work for several hours. The evidence does not establish defendant's contention that plaintiff intended to permanently quit the piece-work pile peeling. His own testimony was that he expected to go back to work. Defendant's foreman Sam King is not conclusive either way, as noted from the following answer: "He said he (plaintiff) had quit, he wasn't going to peel no more piles today, it is too hot, and I never asked him whether he was coming back the next day nor nothing about it."
Defendant and his foreman both knew that plaintiff, although he had ceased to work on the job, expected to avail himself of the usual means of transportation back to his home. The fact that defendant's foreman had accepted responsibility for assisting plaintiff in returning to his home is shown by his suggestion that plaintiff might ride back to Monroe in defendant's automobile. The suggestion was not followed only because defendant expected to go to another location before returning. Had defendant's foreman, when plaintiff notified him that he was quitting, advised *Page 486 
plaintiff that he would not be permitted to ride on one of the trucks, or had defendant insisted that plaintiff go back with him at noon, a different question might be presented. The evidence, however, discloses that defendant and his foreman knew that plaintiff expected to ride home on the truck and that plaintiff's return to Monroe on the truck was with the tacit consent of defendant and his foreman.
While each case must necessarily be decided often on its own facts and circumstances, the above finding is the more logical because plaintiff's job was at a considerable distance from his home and in a remote locality, A further circumstance in favor of not penalizing plaintiff by holding that his ride home had been forfeited by virtue of his quitting before noon was the fact that he was engaged in piecework; paid only for the poles actually peeled and under no commitment to work at regular hours or for a full day, and his decision to cease work on account of the heat and his weakened condition caused no particular inconvenience to defendant or others on the job. Under the circumstances of the case before us, and in the light of the above cited cases, plaintiff is entitled to compensation for his injuries.
He was paid three cents per lineal foot for one type of piling and two cents per lineal foot for another. The record shows that his earnings under this scale for two full days and the portion of the third day which he worked for defendant amounted to a total of $12.06. Plaintiff testified that he worked until mid-afternoon of the third day. Our appreciation of the record indicates that he quit work before noon at a time when he had not completed the peeling of the seventy foot piling, pay for which was included in the $12.06 paid. Plaintiff was fifty-five years of age and not robust and eager in his work. We have concluded that a fair basis for setting his rate of pay would be to accept the $12.06 as two and one-half days' or one-half week's pay. Consequently, his rate of compensation would be 65% of $24.12, or $15.68 per week.
Plaintiff has asked for judgment for future medical expenses. These were not established with the required certainty.
For the reasons assigned, the judgment appealed from is reversed and judgment is now rendered in favor of plaintiff, Albert L. Guthrie, and against defendant, B. I. McGuffy, awarding plaintiff compensation during disability, not exceeding four hundred weeks, at the rate of $15.63 per week beginning August 6, 1948, with 5% per annum interest from the date due until paid, less the credit of $100.00 previously paid. Plaintiff's claim for medical expenses is dismissed as of nonsuit. Defendant to pay all costs.