**LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellant,**

v.

**Mrs. Irene Booth MOORE, Appellee.**

**No. 15747.**

United States Court of Appeals
Fifth Circuit.

Feb. 2, 1956.

Rehearing Denied March 2, 1956.

T. W. Holloman, Alexandria, La., for appellant. Joseph R. Brown, Kansas City, Mo., of counsel.

Harry V. Booth, Shreveport, La., Booth, Lockard, Jack & Pleasant, Shreveport, La., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is a suit for wrongful death brought against the railroad under Section 1 of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, by the administratrix of the estate of one of its employees. The deceased, a trainmaster on the railroad, was killed in a head-on collision of the Southern Belle No. 1 and the Extra 51–A which occurred at 7:03 A.M. on August 10, 1951, on a section of track near Lettsworth, Louisiana, leased by the railroad from the Texas and Pacific Railroad. He was at the time of his death riding on the Extra 51–A, a troop train carrying Marines from Camp LaJeune, N. C., to San Diego, California, pursuant to outstanding instructions that trainmasters were to ride all troop trains unless more important duties prevented them from doing so. Both of the trains were owned and operated by the defendant, and it was stipulated that the Extra 51–A should have taken a siding to clear the Southern Belle, which was a passenger train operating on schedule time.

The plaintiff's theory of liability is that the railroad failed to exercise reasonable care in operating its trains and in furnishing the deceased with a safe place in which to work. Specifically, she alleged that the negligence of the operating crew of the Extra 51–A in failing to take the siding at Batchelor, Louisiana caused her husband's death. Although the complaint alleged that the conductor was primarily responsible in failing to direct the engineer to take this siding, it also alleged that when the engineer failed to stop at the prescribed point, the fireman and the brakeman, as well as the conductor and the engineer, were negligent in not taking immediate action to stop the train. The railroad's defense is that the deceased, as trainmaster, had the supervisory duty to see that all operating and other rules were complied with by the train crew. It sought to prove below that the failure of the Extra 51–A to take the siding or stop immediately thereafter was ultimately chargeable solely to Moore. The issue was submitted to a jury, which returned a verdict in the plaintiff's favor.

The railroad specifies that the trial court erred in failing to grant it a directed verdict because there was "overwhelming" evidence that the collision resulted from the trainmaster's failing in his responsibility to require the crew to take the siding at Batchelor; in refusing to charge the jury that it must return a verdict for the defendant if it found that the trainmaster had the duty of requiring the crew to comply with rules under which the Extra 51–A should have taken the siding at Batchelor, and had breached that duty, or if it found that when the Extra 51–A passed the siding at Batchelor, Moore had a duty to require the crew to stop the train immediately and had breached that duty; and in refusing to grant a new trial in which it could be made clear to the jury that Moore's duty to enforce the rules was separate from the crew's duty to comply with them.

There is a serious issue whether the railroad saved the second of these

questions for appeal.[1] However, since it goes to the central issue in the case, i. e., whether the trainmaster had the duty of supervising the train crew in its operation of the Extra 51–A, we may consider it under the general rule which allows an appellate court to notice plain errors, although they were not properly excepted to below. United States v. Sellers, 5 Cir., 75 F.2d 623.

■ Regarding the motion for a directed verdict, it is clear that it was correctly denied unless reasonable men could not differ regarding the inferences to be drawn from the evidence. Banks v. Associated Indemnity Corp., 5 Cir., 161 F.2d 305. The parties stipulated that the Uniform Code of Operating Rules governed the operation and movement of the two trains over the track in question. Rule S–90 thereof provides that if the engineer of a train passes the last station before a meeting or waiting point without signalling that his rights are restricted at that station, "or fails to prepare to stop short of the fouling point, when required, the conductor will take immediate action to stop the train." It likewise provides, "Firemen, brakemen and other members of the crew will also be held responsible for failure to take immediate action to stop the train."

Admitting that in the first instance the responsibility for taking the siding or stopping immediately thereafter lay with the operating crew, the railroad sought to show that once the crew failed in these duties, the responsibility devolved upon Moore to halt the train immediately. To this end, it introduced in evidence a book of the railroad's Transportation Rules, under which conductors, brakemen and enginemen are required to "report to and receive instructions from the trainmaster." It also elicited testimony from its expert witness, the railroad's Superintendent of Transportation, to the effect that when the engineer and the conductor together ignored giving the proper signal at the last station before Batchelor, it became the trainmaster's duty to give the signal himself, or order the engineer to do it, or order the engineer to stop the train immediately. The witness explained that the failure of the crew to act left the train in an emergency which should have been noted and acted upon by the trainmaster.

In rebuttal, the plaintiff's expert witness, a former division superintendent on the railroad, exonerated the trainmaster from all responsibility for the accident. He testified that the duty of operating a train is solely that of the train crew, that it is not one of the trainmaster's duties to know of meeting points, and specifically, that it was not Moore's duty to know of the waiting point at Batchelor. He testified that the purpose of requiring trainmasters to ride troop trains is to make the train comfortable for the troops and to see that it is properly supplied. In riding thereon, the witness testified, the trainmaster "is principally goodwill ambassador for the railroad."

In support of its own theory, the railroad introduced evidence to show that Moore had in fact taken over the task of

---

1. The specification alleges error in the refusal of a requested instruction. However, the court left the request out of its proposed charge, copies of which it gave to opposing counsel on the day before the case went to the jury. At a conference held on the following morning in the judge's chambers, the railroad's counsel made no objection to the omission of its requested instruction from the proposed charge. The judge stated at that time that "your proposed charges, as written, will appear in the record on appeal, to be compared with the charge as I give it to the Jury, and you will be allowed an exception to any change that I may make in the charge as given." This statement could not, of course, nullify the effect of the provision in Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." After the jury was instructed, the railroad's counsel raised no objection regarding this issue.

directing the train crew in their operation of the Extra 51–A. Thus, it was shown that Moore by radio ordered the No. 9, a passenger train, to wait for the Extra 51–A at Baton Rouge, about 35 miles south of the collision point, and that the No. 9 complied with his order. Its witnesses also testified that Moore was in the cab of the Extra 51–A when it went through Baton Rouge and that when it passed through Lettsworth, 1.59 miles south of the collision point, three figures were observed in the cab.

Clearly, this evidence did not warrant taking the case from the jury. In the first place, the nature of the trainmaster's duties aboard a troop train was the subject of irreconcilably conflicting expert testimony, not finally resolvable by reference to any of the published rules introduced at the trial. It may be conceded that the term "trainmaster" would ordinarily import a position of authority, but no such meaning can be attributed to it in the absence of evidence either of affirmative instructions or standing orders or rules specifically outlining the duties of such a functionary. In the second place, the fact that Moore ordered the No. 9 halted at Baton Rouge, and was seen in the cab at that station, and perhaps at Lettsworth, also, does not compel the inference that he had "replaced the engineer," as the railroad contends. It is a matter of speculation whether he ordered the No. 9 held at the engineer's request or at his own instance, as well as what he was doing in the cab, if indeed he was there at the time of the collision. The likelihood of the conclusions which the railroad seeks to draw from this evidence is clearly a matter which was correctly reserved for the jury's consideration. Banks v. Associated Indemnity Corp., supra; Mutual Life Insurance Co. of New York v. Hamilton, 5 Cir., 143 F.2d 726.

The second and third specifications of error are concerned with a common issue. The second assigns error in the rejection of a requested instruction, and the third charges error in the denial of a motion for new trial in which the instruction would be given as requested. The railroad contends that it had a right to an instruction explaining its "theory of the case" to the jury. It asserts that its defense is that "Moore had the separate, distinct and sole responsibility to see that crew members operating the train complied with all operating rules."

The court charged that

"It [the railroad] affirmatively alleges that the collision between the two trains was due solely and proximately to the negligence of Mr. Moore, plaintiff's deceased husband, in failing to perform his responsibilities and duties to see that the operating rules and special rules and instructions in the movement of troop trains were complied with, such duties being his responsibility and only his responsibility, it being contended that their performance was the reason that Mr. Moore was instructed to ride this train and that his duties and responsibilities could not be delegated by him to other members of the crew."

The crucial error in the charge as given, the railroad argues, is its regarding the trainmaster as one of the train crew instead of superior to and apart from them. However, the use of the phrase "other members of the crew," while probably an inaccuracy, can hardly be said in itself to constitute a refusal to charge the railroad's theory of defense. The first part of the sentence emphasizes the railroad's argument that Moore was on the train to see that operating rules were complied with, and since the train crew was charged with observing the rules, the placing of the trainmaster on board to enforce them clearly shows the distinction between supervisor and worker. Of greater importance, however, practically speaking, is the fact that the jury had heard testimony for two days relating to the responsibilities of all six of the railroad's employees on the Extra 51–A, and especially the trainmaster, and could hardly have been thrown into confusion at the last moment regarding their

respective duties by the trial court's use of a single technically inaccurate phrase.

■ Apart from this, the railroad's only objection to the charge is that it was long and confusing. It is true that the charge was quite long—covering twenty-six pages in the record—but it was a model of clarity.[2] The contention that the charge was confusing is supported by reference to the use of the phrase "other members of the crew," discussed above, and to the fact that the railroad's allegation that Moore's negligence was the sole proximate cause of the accident was discussed along with the comparative negligence rule. We think that it was quite proper for the court to compare these two principles with each other, for if they were kept apart, the jury might not have been able to reconcile them in its own thinking. It is noteworthy also that the instruction regarding proximate cause—that if Moore's negligence was the sole proximate cause of the accident, the jury must find for the railroad—appears at two other places in the charge, in the instructions relating to damages, and in the discussion of respondeat superior. Regarding the charge on proximate cause in the latter context, the railroad states, "Unencumbered by 25 additional pages of instructions, that would compensate slightly, but it falls far short of giving a specific instruction on defendant's theory of the case." Thus the railroad returns again to its first argument, on which we need not elaborate further, and finally argues that the charge was confusing largely because it was long, a point which we cannot concede. To the contrary, the charge, although long, was certainly clear, and the contentions of the parties were fairly stated therein. We can find no error either in the instructions or in the submission of the case to the jury.

We conclude, therefore, that the judgment must be affirmed.

Affirmed.

2. The railroad states in its brief: "In pursuing this argument we disclaim any intention to criticize the trial judge's integrity and ability. He is simply part of a system which seems to require the writing of an encyclopedic treatise and submission of it to the jury, rather than charge on specific issues and legal principles separately and distinctly stated without confusion."